UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ZELMA MOTLEY,                                    Case No.: 20-11313
                          Plaintiff,
v.                                               Gershwin A. Drain
                                                 United States District Judge
METRO MAN I, INC., and
WESTWOOD NURSING                                 Curtis Ivy, Jr.
CENTER,                                          United States Magistrate Judge
                          Defendants.
_____/

**ORDER GRANTING IN PART MOTION TO COMPEL (ECF No. 59) AND
TERMINATING AS MOOT MOTION TO COMPEL (ECF No. 61)**

Plaintiff sues Defendant for violations of the ADA and Michigan disability

rights laws in her termination from employment at Defendant's nursing center.

She worked for Defendant from February 2015 to January 2019.  Plaintiff filed two

motions to compel—for sufficient responses to certain discovery requests (ECF

No. 59) and for Defendant to produce a corporate 30(b)(6) witness for deposition

(ECF  No. 61).  The motions were referred to the undersigned.  (ECF No. 62).  The

Court conducted a telephonic status conference on the motions on October 24,

2022.  The matter is now ready for determination.

A.    General Discovery Principles

Parties may obtain discovery related to any nonprivileged matter relevant to

any party's claim or defense and proportional to the needs of the case, considering

the importance of the issues at stake in the action, the amount in controversy, the

parties' relative access to relevant information, the parties' resources, the

importance of the discovery in resolving the issues, and whether the burden or

expense of the proposed discovery outweighs its likely benefit.  Fed. R. Civ. P.

26.  Information within this scope of discovery need not be admissible in evidence

to be discoverable.  *Id.*  "Although a [party] should not be denied access to

information necessary to establish her claim, neither may a [party] be permitted to

'go fishing,' and a trial court retains discretion to determine that a discovery

request is too broad and oppressive."  *Superior Prod. P'ship v. Gordon Auto Body*

*Parts Co.*, 784 F.3d 311, 320-21 (6th Cir. 2015) (citing *Surles ex rel. Johnson v.*

*Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)).  A party seeking

discovery may move for an order compelling an answer, designation, production,

or inspection.  Fed. R. Civ. P. 37.

B.    <u>Motion to Compel at ECF No. 59</u>

Plaintiff challenges Defendant's responses to interrogatories, requests to

admit, and requests to produce documents.  The discovery requests relate to

Defendant's defense that Plaintiff's LPN license was suspended while employed

by Defendant, and had it known it would have terminated her employment for that

reason (an "after-acquired evidence" defense).  The Court reopened discovery for

the limited purpose of obtaining evidence on the potential license suspension issue,

i.e., the status of Plaintiff's license and whether Defendant would have fired her for having a suspended license if it knew.  Plaintiff asserts that Defendant's discovery responses are evasive or non-responsive.  Defendant argues Plaintiff already has the information or what she seeks no longer exists or is irrelevant.

1.      Interrogatory No. 23

This interrogatory seeks a description of efforts Defendant undertook since January 1, 2012, to ensure all licensed employees were properly licensed, including any audits/investigations performed by Defendant or the State, all policies and procedures related to the efforts to ensure licensure, and all documents related to this interrogatory.  (ECF No. 59, PageID.530).  Defendant responded that employees are responsible for maintaining their licenses and to inform the employer if their license is suspended, that it was unaware of any audits or investigations responsive to the request, and that it has not located any responsive documents.  (*Id.* at PageID.531).

Plaintiff insists the response is deficient because Defendant cited Plaintiff's statutory obligation to notify her employer of licensure changes, but did not cite its own statutory obligations to monitor employee licenses.  Even so, if Defendant is incorrect on the law or incomplete on the law, that alone does not render the response incomplete.  Defendant's answer amounts to a statement that it did not

take steps to ensure its nurses were licensed, which answers part of the interrogatory.

The interrogatory also asks for documents related to employee licensure and any State investigations involving the Defendant.  Defendant responded that it was unaware of any audits or investigations that would be relevant.  Through subpoenas, Plaintiff obtained documents from the State of Michigan covering investigations finding that Defendant did not maintain a list of licensed personnel in 2017 and that it was understaffed in 2021.  Defendant did not mention these investigations or provide documents from the investigations.  (ECF No. 59, PageID.531-32).  Defendant says those investigations are not relevant—it corrected the list-of-nurses issue in 2017 and understaffing during the pandemic is unrelated to licensure.  In any event, it says Plaintiff now has the documents and should not need a second copy from Defendant.  (ECF No. 60, PageID.841).

The 2017 investigation appears relevant to the issues here.  Defendant must supplement its answer to include the 2017 investigation.  The parties are directed to confer on the issue of documents from this investigation.  If Plaintiff has all possible documents from its subpoenas to the State, then Defendant need not provide any.  If there are documents outstanding, Defendants must respond accordingly.  The supplemental responses are due **within 14 days of this Order**.

The 2021 investigation that revealed understaffing at the facility is not relevant to the question of licensure.  No further response will be required for this investigation.

2.      Requests to Admit ("RTA")

Plaintiff contends that responses to several RTAs are deficient.

In RTA No. 1, Plaintiff sought an admission that M.C.L. § 333.21796 provides "that a nursing home is responsible for ensuring" personnel are properly licensed.  (ECF No. 59, PageID.532).  Defendant admitted in part and quoted a portion from the statute.  In briefing, the Defendant explained that it admitted the request only in part and quoted the statute to use the correct word from the statute, "insure," in place of Plaintiff's word, "ensure."  (ECF No. 60, PageID.845). Defendant has fully responded to the request.

RTA No. 2 asked Defendant to admit it had no policies or procedures in place to monitor the licenses of its licensed personnel.  Defendant denied as to manner and form and because it's untrue, but also admitted that during Plaintiff's employment there was no written policy or procedure for monitoring LPN licenses. (ECF No. 59, PageID.533-34).  Plaintiff argues this response conflicts with the interrogatory discussed above in that this response suggests it did have policies or procedures in place at some point.  She contends that Defendant should supplement

its response to clarify whether it took any efforts from January 1, 2015, through the present to ensure proper licensure.

The response to RTA No. 2 does not conflict with Interrogatory No. 23.  In response to the interrogatory, Defendant stated that, during Plaintiff's employment, it did not seek to ensure its LPNs were properly licensed.  (ECF No. 59, PageID.531).  In response to this RTA, it stated for the same period it did not have a policy in pace to monitor licenses.  These responses do not conflict. Defendant sufficiently responded to the request admitting that it did not have such a policy in place during Plaintiff's employment.

In RTA No. 3, Plaintiff asked Defendant to admit that, from January 1, 2015, to the present, it never terminated an LPN because their license was suspended.  Defendant denied to the extent that the RTA suggests it knowingly permitted LPNs to work without being licensed.  It admitted that it did not terminate Plaintiff when her license was suspended because it was unaware of such.  (ECF No. 59, PageID.534-35).

Defendant's point that the RTA is somewhat of a loaded question is acknowledged, that said, it has not answered the request—during that time, did it terminate an LPN for having a suspending license.  Defendant must supplement its response **within 14 days** of this Order.

Like RTA No. 3, RTA No. 4 seeks an admission that Defendant never terminated an LPN during Plaintiff's employment because of a lapsed license from January 1, 2015, to the present.  Defendant again responded that it denied the request to the extent that it suggests it allowed LPNs to work on a lapsed license. It also responded that, in accordance with its handbook, it would terminate an LPN for this issue.  (ECF No. 59, PageID.535-36).  Like RTA No. 3, Defendant's response does not directly answer the request.  Supplementation is due **within 14 days** of this Order.

RTA Nos. 5 and 6 ask for an admission that Defendant never terminated any employee because their license was suspended (RTA 5) or lapsed (RTA 6). Defendant objected that "any employee" and "license" were undefined and vague and potentially capture irrelevant information (e.g., if a driver's license was suspended or lapsed, that would not be grounds to terminate a nursing employee). (ECF No. 59, PageID.536-38).  Defendant also objected that the request is duplicative of RTAs 3 and 4.

This request must be limited to employees who were required to hold a nursing or LPN license.  Plaintiff recognized this and clarified to Defendant that she only seeks information about nurse and LPN employees.  So limited, these requests are duplicative of RTAs 3 and 4.  No supplemental response is required.

3.    Requests for Production of Documents ("RFPs"), Second Set

7

RFP No. 2 asks for copies of policies or procedures relating to licensure of Defendant's licensed personnel since January 1, 2012.  Defendant objected, asserting that it is duplicative of Interrogatory No. 23, above, and it referred Plaintiff to the job description and policies previously produced.  (ECF No. 59, PageID.538).  In other responses, Defendant stated it did not have policies in place regarding licensure during Plaintiff's employment.  For that period, if there are no documents to produce, then the Court cannot compel production.  From Defendant's answer it is unclear if there are responsive documents from the period outside of Plaintiff's employment.  If there are, they must be produced **within 14 days** of this Order.

Requests 7, 8, and 9 ask for internal or external documents regarding audits or investigations by the State since January 1, 2012 and communications with employees or agents regarding an audit or investigation.  Defendant says it could not locate any relevant documents.  (ECF No. 59, PageID.539).  As discussed above, there were investigations and documents flowing from them in 2017 and 2021 (the 2021 investigation is not relevant here).  Defendant either needs to produce those documents, along with any other responsive documents created before the 2017 investigation, or state that they have nothing more to produce than what Plaintiff got directly from the State **within 14 days** of this Order.

4.    Requests for Production of Documents, Third Set

Several RFPs from the third set of requests are at issue. Request 1 seeks personnel files for all of Defendant's licensed personnel working at the Westwood nursing facility from January 1, 2015, through December 31, 2019. Defendant referred Plaintiff to personnel files previously produced. (ECF No. 59, PageID.540). Plaintiff asserts that is not clear if the files previously produced cover the entire scope of requests; Defendant declined to provide confirmation to Plaintiff. (*Id.* at PageID.542). If the produced files cover the scope of RFP No. 1, Defendant must confirmation that to Plaintiff. If not, Defendant must produce the files requested, except that for files not yet produced, the limits discussed with respect to RFP No. 3, below, apply here.

RFP No. 3 asks for "all documents identifying all of Defendant's licensed personnel" at Westwood from January 1, 2015, through December 31, 2019. Defendant's objections included that the request was "unduly burdensome, oppressive, overly broad, and limitless," that the terms "all documents" and identifying all licensed personnel were "meaningless." (*Id.* at PageID.540). Defendant objected that responses would invade the privacy rights of the employees and the facts and circumstances of their employment would be substantially dissimilar to Plaintiff. Defendant further objected that the information was beyond the scope of limited discovery. (*Id.*).

9

There should be no dispute about the scope of the RFP—it is limited to nurses and LPNs at the facility.  Defendant's point that the reference to "all documents identifying all of Defendant's licensed personnel" is broad and undefined is well taken.  Production of the personnel files in response to RFP No. 1 should sufficiently identify the licensed personnel.  No further response is required for RFP No. 3.

Requests 2, 4, and 5 are about other employment positions are Westwood from March 2, 2017, through December 31, 2019.  Plaintiff seeks job descriptions, job postings, or other documents demonstrating job qualifications for all employment positions (RFP No. 2); all documents identifying all employment positions (RFP No. 4); and, for each employment position, all documents identifying the qualifications and whether there were any vacancies during the relevant period (RFP No. 5).  (ECF No. 59, PageID.542-43).  Defendant objected that the requests are unduly burdensome and oppressive, and that jobs unrelated to nursing are not relevant to the licensure issue.  Plaintiff argues the documents are relevant to show whether Defendant would have terminated Plaintiff for the license issues or transferred her to a different position until the issues were resolved.  (*Id.* at PageID.544).

In an attempt to resolve the dispute, Plaintiff offered to accept a list of all employment positions, including whether each position was vacant during the

relevant period, and job descriptions or qualifications for each position.  (*Id.*).

Defendant argued these requests are meant to harass Defendant and cause undue

burden and expense.  It argues that this information will not show whether

Defendant would have terminated Plaintiff for having a suspended license.  (ECF

No. 60, PageID.843).

Relevance for discovery purposes is quite broad.  If there were positions

open while Plaintiff was employed (but with a suspended license) for which she

was qualified, it could make it more likely that Defendant would have transferred

her to another position until the issue was resolved instead of terminate her for

having a suspended license.  That said, the scope of the request is too broad.

Positions that were unavailable to Plaintiff, i.e., that were not vacant during the

relevant period, are irrelevant here.  So Defendant must supplement production to

provide a list of vacant positions with job descriptions or qualifications during the

relevant period **within 14 days** of this Order.

C.    Motion to Compel at ECF No. 61

Plaintiff moved for an order compelling Defendant to produce a corporate

witness for a Fed. R. Civ. P. 30(b)(6) deposition, and for that witness to produce

certain documents at the deposition.  (ECF No. 61).  In response to that motion,

Defendant stated that it has identified the witness to be produced.  At the status

conference on these discovery motions, the parties confirmed that the witness has

been identified, but they need to select a mutually agreeable date for the deposition.

What remains is the dispute about the documents the witness must produce. During the status conference, Plaintiff confirmed that a ruling on the document requests at issue in the motion to compel at ECF No. 59 will resolve the documents issue in ECF No. 61.

Since the documents issue is resolved by the Order on ECF No. 59, and the parties have only to schedule the deposition, the motion to compel the deposition is **TERMINATED AS MOOT**.  The parties must schedule the deposition to occur as soon as practicable given pending trial date.

**IT IS SO ORDERED**.

The parties to this action may object to and seek review of this Order, but are required to file any objections within 14 days of service as provided for in Federal Rule of Civil Procedure 72(a) and Local Rule 72.1(d).  A party may not assign as error any defect in this Order to which timely objection was not made. Fed. R. Civ. P. 72(a).  Any objections are required to specify the part of the Order to which the party objects and state the basis of the objection.  When an objection is filed to a magistrate judge's ruling on a non-dispositive motion, the ruling remains in full force and effect unless and until it is stayed by the magistrate judge or a district judge.  E.D. Mich. Local Rule 72.2.

Date: October 26, 2022                    s/Curtis Ivy, Jr.
                                          Curtis Ivy, Jr.
                                          United States Magistrate Judge