UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ZELMA MOTLEY,

          Plaintiff,

vs.

METRO MAN I, INC. DBA
WESTWOOD NURSING CENTER

          Defendant.

Case No. 20-cv-11313

HON. GERSHWIN A. DRAIN
United States District Judge

HON. CURTIS IVY, JR
United States Magistrate Judge

| MILLER COHEN, PLC | HONIGMAN LLP |
|---|---|
| Keith D. Flynn (P74192) | Mahja D. Zeon (P83619) |
| Andrea M. Frailey (P82466) | Khalilah V. Spencer (P63933) |
| Attorneys for Plaintiff | Attorneys for Defendant |
| 7700 Second Avenue, Suite 335 | 2290 First National Building |
| Detroit, MI 48202 | 660 Woodward Avenue |
| (T) 313-964-4454 / (F) 313-964-4490 | Detroit, MI 48226 |
| kflynn@millercohen.com | (313) 465-7344 |
| afrailey@millercohen.com | mzeon@honigman.com |
| | kspencer@honigman.com |

## **AMENDED JOINT FINAL PRETRIAL ORDER**

A final pretrial conference is scheduled in this matter before Honorable

Gershwin A. Drain on Wednesday, November 2, 2022, at 2:00 PM.

Appearing on behalf of the parties are the following:

Keith D. Flynn and Andrea M. Frailey, Counsel for Plaintiff

Mahja D. Zeon and Khalilah V. Spencer, Counsel for Defendant.

**(1)    Jurisdiction.**

The Court has jurisdiction over this case based on federal question jurisdiction pursuant to 28 U.S.C. §1331 as Plaintiff's disability discrimination claim under the Americans with Disabilities Act ("ADA") arises from federal law.  Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over Plaintiff's state law claims as these claims arise from the same case and controversy.  Jurisdiction is not contested.

**(2)    Plaintiff's Claims.**

Plaintiff brings claims for disability discrimination under the ADA and Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA") and a claim for weight discrimination under Michigan's Elliot Larsen Civil Rights Act ("ELCRA") against Defendant. Plaintiff was a loyal and hard-working employee of Defendant from about February 6, 2015, to on or about January 4, 2019 when she was unlawfully terminated.  Plaintiff served in various positions, including managerial positions, but ultimately, at the time of her discharge, was working as a Licensed Practical Nurse (LPN).

Around April 2016, Ms. Motley suffered an injury leading to sciatica and a disc in her back that is bone-to-bone.  Her injury causes back and hip pain and substantially impairs Ms. Motley's major life activities, including but not limited to walking, sleeping, and activities of daily living including showering, getting dressed,

and performing daily chores around her home. Around this time, Ms. Motley began using a cane to ambulate. The cane helps to relieve pressure, and therefore pain, and allows Ms. Motley to feel safer and more stable. She only needs the cane when moving from place to place, not when standing in one place.  She can properly care for her patients with both hands.

In 2016, Ms. Motley informed Defendant's Administrator of her disability and need to use the cane at times to help her walk and get around faster. Defendant never asked Ms. Motley for a doctor's note for the cane or expressed any concern regarding Ms. Motley's cane usage. Although Ms. Motley is "disabled," she is still able to fully perform her job with the use of her cane and did so for almost two years without any issue before Defendant terminated her.

Around early 2018, Defendant hired a new Administrator, Kwailin Belitsos. Defendant also assigned a "consultant," Sheila Powell, to act as the liaison between the facility and corporate on matters of patient care. Lorea Lewis, the prior Assistant Director of Nursing (DON), was promoted to DON around this time.

Not long after Ms. Lewis became DON, she began calling Ms. Motley into her office and advising her that Ms. Powell had questions about her cane. Ms. Motley regularly advised Ms. Lewis that she had no problems performing her job duties with a cane, and there were never any reports of poor performance due to the cane. Ms. Motley further regularly advised Ms. Lewis of various treatment appointments she

3

attended for her condition. On one occasion, Ms. Lewis said "well maybe if you would lose some of that weight you wouldn't have that problem."

During another meeting between Ms. Lewis and Ms. Motley, Ms. Lewis told Ms. Motley that Ms. Powell felt Ms. Motley was a liability. Ms. Motley began to take the freight elevator to the basement to punch in, in order to stay out of Ms. Powell's sight. Ms. Motley had no choice but to continue to use the cane and she needed it to accommodate her disability. In addition to the fact that an accommodation for the cane had already been granted two years prior, her need for an accommodation was obvious and she explained to Defendant why she needed the cane on more than one occasion.

In August 2018, Defendant cut Ms. Motley's hours, while allowing less senior employees to work full hours. Despite her seniority, Defendant did not offer Ms. Motley a slot on a 12-hour shift, which would have allowed her to keep her hours. Defendant never provided Ms. Motley with a reason why her hours were cut. Ms. Motley began picking up extra shifts in order to meet her full-time hours.

In November 2018, Sharmeen Warren of Human Resources began harassing Ms. Motley about her cane, at Ms. Powell's direction. Ms. Warren advised Ms. Motley that "they" asked her to take Ms. Motley off the schedule until she could get a note from her doctor stating that she had no restrictions. Although Ms. Motley already had provided a note, she was told that Ms. Powell wanted another. Ms.

46212313.1

Motley obtained another note on November 17, 2018, which said she had no physical restrictions to work and provided it to Ms. Powell who seemed satisfied. With the use of her cane, Ms. Motley could perform all functions of her job without any restrictions.

After that, Defendant told Ms. Motley she could only walk from her car to the nurses' station with her cane and could not walk through the facility with it. Ms. Motley was told that if Ms. Powell saw her with the cane, that she would be fired despite being able to perform physical tasks without restrictions with the use of a cane as needed.

Before Thanksgiving 2018, Ms. Motley was off work due to a severe cold and congestive cough. Ms. Motley turned in a doctor's note and was threatened by Ms. Warren not to get another one. Ms. Motley was told that there were only so many she could bring in and was threatened with discharge if she brought in another note, even though she had only used about 2-3 sick days out of the nine allowed.

Just before the New Year, Ms. Motley had a conversation about her hours with the scheduler. She asked why she should have to pick up additional shifts when she had more seniority than others. The scheduler advised Ms. Motley that Ms. Lewis claimed that Ms. Motley was offered a slot but turned it down. Ms. Motley advised the scheduler that no one had ever offered her a slot. The scheduler said everything would be straightened out the following week. About thirty minutes later,

46212313.1

Ms. Motley got a text from Ms. Lewis saying that she, Ms. Belitsos, and Human Resources were going to sit down and address all of Ms. Motley's concerns and issues the following week.

On Friday, January 4, 2019, Ms. Motley learned that she had been taken off the schedule again. Ms. Motley sent a text to Ms. Lewis asking why she was off the schedule. Ms. Lewis advised Ms. Motley to come to a meeting on the following Monday to find out. Later that same day, Ms. Warren contacted Ms. Motley and told her that that "they" just told her to let Ms. Motley go. Ms. Motley asked why but was not given a reason. That same day, Ms. Lewis gave Ms. Motley a termination letter which stated, "I am writing this letter to inform you that Westwood Nursing Center will no longer require your services.  Our Company is going in a different direction. MI is an at will State." During the depositions, it became clear what that "different direction" was; namely, they fired Ms. Motley over her cane.

As evidenced by the termination letter, deposition testimony, and Ms. Motley's personnel file, Defendant did not have a legitimate non-discriminatory reason to terminate Ms. Motley.  Defendant simply decided it did not want to have an overweight, disabled nurse and unlawfully terminated Ms. Motley.

To the extent Defendant attempts to argue that it would have terminated Ms. Motley had it known her nursing license was suspended, Defendant's  documents indicate otherwise. When an employee's license lapsed, the Defendant merely

6

suspended the employee until the licensing issue was resolved. The Order from the Board of Nursing specified that Plaintiff's license was to be suspended for a minimum of one day and immediately reinstated as soon as Plaintiff completed the enumerated tasks.  Plaintiff would have completed these tasks immediately had she received notice of the Order.  All evidence, including testimony from Defendant's management team, demonstrate that Plaintiff performed her job exceptionally well. A reasonable jury could find that Defendant would have either (1) suspended Ms. Motley; (2) limited her job duties to that of a nursing assistant; or (3) transferred her to a non-licensed position, such as housekeeping or security, until the license issue was resolved.

Finally, Defendant has not produced any evidence demonstrating that Plaintiff's licensing issues would be grounds for immediate termination.  On the contrary, evidence has been produced that demonstrates that Defendant does not value licensing enough to comply with its own legal obligations under the Michigan Public Health Code.  A reasonable jury could find that an institution with so little regard for its legal obligations may also not have much regard for the licensure of its staff.

**(3)    Defendant's Claims/Defenses.**

Metro Man I Inc. DBA Westwood Nursing Center (hereinafter "Westwood") disputes that Plaintiff will be able to prove any of her claims at trial.   Defendant discovered in May 2022 that Plaintiff's license to practice nursing as an LPN was suspended in August 2018, a fact that Plaintiff had concealed not only during the last months of her employment with Westwood but also during the discovery phase of this litigation. Plaintiff refused to disclose the fact that her license was suspended to Westwood, in violation of Orders issued by the State of Michigan Licensing and Regulatory Affairs' Board of Nursing ("LARA").

The suspension of Plaintiff's license in August 2018, prior to her January 2019 termination, is an affirmative defense to her claims. Because Plaintiff did not have a license to practice nursing as an LPN, she was not qualified for her position which required an LPN license. Michigan law also requires that one have an LPN license to work as an LPN.  Plaintiff's LPN license remains suspended as of the date of this filing.

Furthermore, Plaintiff will be unable to establish a *prima facia* case of disability or weight discrimination. She will be unable to prove that:

1.   She suffered a disability or that Westwood regarded her as disabled; or

2.   She was qualified for her job, with or without an accommodation.

Even if Plaintiff can establish a prima facie case (she cannot), she will be unable to prove that Westwood's legitimate, non-discriminatory reason for termination was a pretext for discrimination.  Plaintiff will be unable to prove that her employment was terminated because of her disability and/or weight.

*Arguing arguendo*, that Plaintiff is able to prove Westwood discriminated against her (she cannot), Plaintiff failed to mitigate her damages, and will be unable to prove that she is entitled to damages.

**(4)   Stipulation of Facts.**

1.   Zelma Motley worked for Westwood from February 6, 2015, to on or about January 4, 2019.

2.   Westwood terminated Ms. Motley's employment on January 4, 2019.

3.   Ms. Motley filed a Charge of Discrimination with the Equal Employment Opportunity Commission on April 9, 2019.

**(5)   Issues of Fact to be Litigated.**

*Joint:*

1.   Did Westwood regard Plaintiff as disabled?

2.   Could Plaintiff perform the essential functions of her position?

3.   Did Plaintiff notify Westwood of her need for an accommodation?

4.   Was Plaintiff's employment terminated because of her disability?

5.   Was Plaintiff's employment terminated because of her weight?

9

6.      Did Plaintiff prove she suffered damages?

7.      Has Plaintiff made reasonable efforts to mitigate her damages?

8.      What damages, if any, did Plaintiff sustain as a result of discrimination on the basis of her weight?

9.      What damages, if any, did Plaintiff sustain as a result of discrimination on the basis of her alleged disability?

10.     Did Plaintiff suffer emotional distress?

***Defendant:***

1.      Could Plaintiff perform the essential functions of her position once her license as an LPN was suspended?

2.      Did Plaintiff have a duty to notify Westwood that LARA had placed her on probation and assessed a fine?

3.      Did Plaintiff have a duty to notify Westwood that LARA had suspended her LPN license and assessed a fine?

4.      Was Plaintiff's LPN license placed on probation by LARA on March 2, 2017 and was that probation effective April 1, 2017?

5.      Was Plaintiff prohibited, by law, from performing duties as an LPN after her LPN license was suspended?

6.      Was Plaintiff's LPN license suspended on July 12, 2018 and was that suspension effective August 25, 2018?

46212313.1

**(6)    Issues of Law to be Litigated.**

*Joint:*

1.    Did Westwood regard Plaintiff as disabled?

2.    Was Plaintiff a qualified individual with a disability under the ADA?

3.    Was Plaintiff qualified for her job, with or without an accommodation?

4.    Did Westwood proffer a legitimate, non-discriminatory reason for the termination of Plaintiff's employment?

5.    Did Plaintiff prove that Westwood's legitimate, non-discriminatory reason for the termination of Plaintiff's employment was a pretext?

6.    Was Plaintiff's disability or perceived disability the but-for cause of her termination?

7.    Was Plaintiff's weight one of the motives or reasons which made a difference in Westwood's decision to terminate Plaintiff's employment?

8.    Did Plaintiff have a disability that was unrelated to her ability to perform the job duties?

9.    Was Plaintiff regarded as having a disability that was unrelated to her ability to perform the job duties?

46212313.1

10. Was Plaintiff's disability or perceived disability one of the motives or reasons which made a difference in Westwood's decision to terminate Plaintiff's employment?

11. Is Plaintiff entitled to damages?

12. Has Plaintiff proved by clear and convincing evidence that punitive damages should be awarded?

13. Does Plaintiff's claim for economic damages fail where she failed to mitigate her damages?

14. Should Plaintiff's claim for economic damages be reduced because she failed to mitigate her damages?

*Defendant:*

1. Was Plaintiff unable to perform the essential job duties of her position once her LPN license was suspended?

2. Does the suspension of Plaintiff's license to practice nursing as an LPN bar her discrimination claims?

3. Should Plaintiff's claim for economic damages (back pay and front pay) be reduced or eliminated because, under Michigan's Public Health Code, she could not engage in the practice of nursing as an LPN unless she was licensed?

**(7) Evidence Problems Likely to Arise at Trial.**

12

46212313.1

The parties do not anticipate any additional evidentiary issues beyond those raised in their *Motions in Limine* or evidentiary objections as to certain exhibits, as indicated in proposed outline of exhibits below.

**(8)    Witnesses.**

   **Plaintiff's Witnesses:**

As Defendant has refused to produce a corporate representative for a Rule 30(b)(6) deposition, (a refusal which is now subject to a pending motion to compel), Plaintiff's witness list is subject to change.

A. Witnesses Plaintiff will call at trial:

| Witness Name | Witness Type | Method |
|---|---|---|
| Zelma Motley | Lay | In-person |
| Lorea Lewis | Lay | In-person |
| Sharmeen Warren | Lay | In-person |
| Cassandra Fuller | Lay | In-person |
| Defendant's Designated Corporate Representative | Corporate Representative | In-person |

B. Witnesses Plaintiff may call at trial

| Witness Name | Witness Type | Method |
|---|---|---|
| Kweilin Belitsos | Lay | In-person |
| Sheila Powell | Lay | In-person |
| Any and all rebuttal witnesses | Lay | In-person |
| Keeper of the Records, LARA | Lay | In-person |

46212313.1

**Defendant's Witnesses**

Subject to this Court's rulings on Defendant's *Motions in Limine*, Defendant's Witness List is subject to change.

A. Witnesses whom Defendants will call at trial:

| Witness Name | Witness Type | Method |
|---|---|---|
| Zelma Motley | Lay | In person |
| Keeper of Records, LARA | Lay | In person |
| Michael Mwathi | Lay | In person |

B. Witnesses whom Defendant may call at trial:

14

| Witness Name | Witness Type | Method | Objection |
|---|---|---|---|
| Cassandra Fuller | Lay | In person | |
| Lorea Lewis | Lay | In person | |
| Sheila Powell | Lay | In person | |
| Sharmeen Warren | Lay | In person | |
| Tunishia Dankenbring | Lay | In person | Objection.  Not named in Defendant's Witness List |
| Forrest Pasanski | Lay | In person | Objection.  Not named in Defendant's Witness List |
| Joseph Campbell | Lay | In person | Objection.  Not named in Defendant's Witness List |
| Jennifer Pappas | Lay | In person | Objection.  Not named in Defendant's Witness List |
| Virginia Abdo | Lay | In person | Objection.  Not named in Defendant's Witness List |
| Patricia Leary | Lay | In person | Objection.  Not named in Defendant's Witness List |

15

| | | | |
|---|---|---|---|
| Debra Wright-Chambers | Lay | In person | Objection. Unknown and unnamed in Defendant's Witness List |
| Kim Gaedeke | Lay | In person | Objection. Unknown and unnamed in Defendant's Witness List |
| Ann Ward-Fuchs | Lay | In person | Objection. Unknown and unnamed in Defendant's Witness List |
| Stephanie Rosenthal | Lay | In person | Objection. Unknown and unnamed in Defendant's Witness List |
| Shannon Wambaugh | Lay | In person | Objection. Unknown and unnamed in Defendant's Witness List |
| Any and all rebuttal witnesses | Lay | In person | |

## (9)    Exhibits.

As Defendant has refused to produce relevant documents (now subject to a pending Motion to Compel), Plaintiff's exhibit list is subject to change.

16

**Plaintiff's Exhibits:**

| Plf. Ex.# | Description | Date Offered | Objected to | Received |
|---|---|---|---|---|
| 1. | Westwood Employee Handbook | | | |
| 2. | Westwood Employee Handbook | | | |
| 3. | 2016-2019 Collective Bargaining Agreement | | FRE 401, 403 | |
| 4. | Plaintiff's Job Description | | | |
| 5. | Charge Nurse Job Description | | FRE 401, 403 | |
| 6. | Employee Performance Review | | | |
| 7. | Doctor's Note | | FRE 401, 403 Ex. 7 is not a doctor's note. It appears to be Plaintiffs Responses to RFPs. | |
| 8. | Westwood Licensed Nurse Schedule | | | |
| 9. | Plaintiff's Termination Letter | | | |
| 10. | Plaintiff's Employee Termination Form | | | |
| 11. | EEOC Charge of Discrimination | | | |
| 12. | EEOC Position Statement | | FRE 401, 403 | |

| Plf. Ex.# | Description | Date Offered | Objected to | Received |
|---|---|---|---|---|
| 13. | EEOC Response to Position Statement | | FRE 401, 403 | |
| 14. | Paystubs | | Duplicative Paystubs are included for 1/14/18-1/27/18; 1/28/18-2/10/18; 2/26/18-3/10/18; | |
| 15. | Documents Supporting Plaintiff's Mitigation Efforts | | | |
| 16. | Plaintiff's Resume | | Undated | |
| 17. | Plaintiff's 2018 and 2019 W-2s | | | |
| 18. | Westwood's Benefits Policy | | (pp 48-51) FRE 401, 403 | |
| 19. | Other Employee Termination Letters | | | |
| 20. | Other Employee Termination Forms | | | |
| 21. | Other Personnel Records | | FRE 401, 403 MIL Precludes (ECF 100 (p. 6-7) | |

46212313.1

| Plf. Ex.# | Description | Date Offered | Objected to | Received |
|---|---|---|---|---|
| 22. | Other Personnel Records | | FRE 401, 403 MIL Precludes (ECF 100 (p. 6-7) | |
| 23. | Westwood Job Descriptions | | FRE 401, 403 | |
| 24. | Documents Demonstrating Defendant's Failure to Comply with Michigan Public Health Code | | FRE 401, 403 MIL Precludes (ECF 100 (p. 11) | |
| 25. | Service Documents from LARA | | | |
| 26. | Plaintiff's Attempts to Reinstate her License | | | |
| 27. | Defendant's Responses to Plaintiff's Second Set of Interrogatories | | | |
| 28. | Defendant's Supplemental Responses to Plaintiff's Second Set of Interrogatories | | | |
| 29. | Defendant's Responses to Plaintiff's First Requests for Admissions, Third Set of Interrogatories, and Third Set of Requests for Production | | | |

19

| Plf. Ex.# | Description | Date Offered | Objected to | Received |
|---|---|---|---|---|
| 30. | Defendant's Supplemental Responses to Plaintiff's First Requests for Admissions, Third Set of Interrogatories, and Third Set of Requests for Production | | | |
| 31. | Defendant's Second Supplemental Responses to Plaintiff's First Requests for Admissions, Third Set of Interrogatories, and Third Set of Requests for Production | | | |
| 32. | M.C.L § 333.21796 | | FRE 401, 403 MIL Precludes (ECF 100 (p. 11) | |
| 33. | M.C.L. § 333.21782 | | FRE 401, 403 MIL Precludes (ECF 100 (p. 11) | |
| 34. | M.C.L. § 333.16241 | | | |

20

| Plf. Ex.# | Description | Date Offered | Objected to | Received |
|---|---|---|---|---|
| 35. | Deposition Transcript of Cassandra Fuller, dated November 16, 2021 (or excerpts therefrom) | | If witness testifies, FRE 401, 402 602. FRE 401, 403 as to any Deposition Exhibits Already Precluded and objects to portions of transcript offered to be read into the record. | |
| 36. | Deposition Transcript of Lorea Lewis, dated November 18, 2021 (or excerpts therefrom) | | If witness testifies, FRE 401, 402 602. FRE 401, 403 as to any Deposition Exhibits Already Precluded and objects to portions of transcript offered to be read into the record. | |

| Plf. Ex.# | Description | Date Offered | Objected to | Received |
|---|---|---|---|---|
| 37. | Deposition Transcript of Kweilin Belitsos, dated November 23, 2021 (or excerpts therefrom) | | If witness testifies, FRE 401, 402 602. FRE 401, 403 as to any Deposition Exhibits Already Precluded and objects to portions of transcript offered to be read into the record. | |
| 38. | Deposition Transcript of Sheila Powell, dated December 7, 2021 (or excerpts therefrom) | | If witness testifies, FRE 401, 402 602. FRE 401, 403 as to any Deposition Exhibits Already Precluded and objects to portions of transcript offered to be read into the record. | |

| Plf. Ex.# | Description | Date Offered | Objected to | Received |
|---|---|---|---|---|
| 39. | Deposition Transcript of Sharmeen Warren, dated December 7, 2021 (or excerpts therefrom) | | If witness testifies, FRE 401, 402 602. FRE 401, 403 as to any Deposition Exhibits Already Precluded and objects to portions of transcript offered to be read into the record. | |
| 40. | Deposition Transcript of Cassandra Fuller, dated December 1, 2022 (or excerpts therefrom) | | If witness testifies, FRE 401, 402 602. FRE 401, 403 as to any Deposition Exhibits Already Precluded and objects to portions of transcript offered to be read into the record. | |

23

| Plf. Ex.# | Description | Date Offered | Objected to | Received |
|---|---|---|---|---|
| 41. | Deposition Transcript of Michael Mwathi, dated December 1, 2022 (or excerpts therefrom) | | If witness testifies, FRE 401, 402 602. FRE 401, 403 as to any Deposition Exhibits Already Precluded and objects to portions of transcript offered to be read into the record. | |
| 42. | Additional Documents Placeholder | | | |
| 43. | Additional Westwood Job Descriptions | | FRE 401, 403. | |
| 44. | List of Westwood Personnel | | FRE 401, 403 | |
| 45. | Defendant's Second Supplemental Responses to Plaintiff's Second Set of Interrogatories | | | |
| 46. | Any and all relevant rebuttal exhibits | | E.D. Mich. LR 16.2(b)(9) | |
| 47. | Any and all relevant impeachment evidence | | E.D. Mich. LR 16.2(b)(9) | |

46212313.1

| Plf. Ex.# | Description | Date Offered | Objected to | Received |
|---|---|---|---|---|
| 48. | Demonstrative evidence and/or enlargements of certain portions of exhibits and/or records. | | Reserve any and all objections | |

**Defendant's Exhibits**

| Exhibit # | Description | Date Offered | Objected to | Received |
|---|---|---|---|---|
| A | Employee handbook dated 7/31/17 and Handbook receipt (signed by Plaintiff 8/3/17) Motley v WNC p. 0146 | | | |
| B | Plaintiff's job description – Motley 9 to 11 and Acknowledgement signed 2/6/15 Motley v WNC p. 0104 | | | |
| C | Employee discipline record – Motley v. WNC 3 to 4 | | 401, 403 | |
| D | Employee discipline record – Motley v. WNC 5 to 7 | | 401, 403 | |
| E | Doctor's note – Motley 25 | | | |
| F | Termination letter – Motley 38 | | | |
| G | Plaintiff's Answers to Interrogatories, Answer to Interrogatory No. 11 | | | |
| H | Plaintiff's emails supporting her mitigation efforts – Motley 46 to 71 | | | |
| I | Plaintiff's resume – Motley 084-085 | | | |
| J | Verification of Licensure – Motley 0382 | | 401, 403, 802 | |
| K | Email from Bureau of Professional Licensing – Motley 0373 | | 401, 403, 802 | |

25

| | | | |
|---|---|---|---|
| L | Letter from the Michigan Department of Licensing and Regulatory Affairs – Motley 0373 | | 401, 403, 802 | |
| M | Administrative Complaint – Motley 0353-0355 | | 401, 403, 802 | |
| N | Final Order – Motley 0356-0361 | | 401, 403, 802 | |
| O | Consent Order – Motley 0346-0352 | | 401, 403, 602 | |
| P | Email from the Bureau of Professional Licensing – Motley 0324-0328 | | 401, 403, 802 | |
| Q | Zelma Motley September 29, 2021 Deposition | | Best evidence | |
| R | Zelma Motley September 29, 2022 Deposition | | Best evidence | |
| S | Westwood Job Descriptions | | | |
| T | Westwood Organizational Chart | | | |
| U | Motley Physical Exam – Motley v WNC p. 000021-22 | | | |
| V | Charge Nurse Job Description Motley Prod. Pp.005-7 | | | |
| W | Request to change shifts – Motley v WNC p. 000142 | | | |
| X | Plaintiff's Answers to Defendant's Second Discovery Requests to Plaintiff | | | |
| Z | Plaintiff's Answers to Defendant's Request for Production | | | |
| AA | Westwood 2017 Survey – Motley 439, 466-468 | | | |
| BB | Westwood 2022 Survey – Motley 439, 465-468 | | | |
| CC | Kweilin Beltisos Deposition | | 401, 403, 802 | |
| DD | Cassandra Fuller Deposition | | 401, 403, 802 | |
| EE | Lorea Lewis Deposition | | 401, 403, 802 | |
| FF | Sheila Powell | | 401, 403, 802 | |
| GG | Sharmeen Warren Deposition | | 401, 403, 802 | |

| HH | Any and all relevant rebuttal exhibits | | E.D. Mich. LR 16.2(b)(9) | |
| II | Any and all relevant impeachment evidence | | E.D. Mich. LR 16.2(b)(9) | |
| KK | Demonstrative evidence and/or enlargements of certain portions of exhibits and/or records. | | Reserve Objections | |

By listing exhibits, Defendant does not concede their admissibility or relevancy.

**(10)   Damages.**

Both the entitlement to any damages and the amount of any damages potentially recoverable is disputed by Defendant.

### A. Plaintiff's Position as to claims against Defendant

Under the ADA, the PWDCRA, and the ELCRA, Ms. Motley is entitled to the following damages:

Back pay and front pay as determined by a jury;

Compensatory damages as determined by a jury, including lost benefits and medical expenses;

Damages for emotional distress as determined by a jury;

Punitive damages as determined by a jury;

Interest, costs, and attorney's fees.

Plaintiff has continued to seek employment up through October 2022 and has produced documents to that effect, therefore she has properly mitigated her damages.

46212313.1

**B. Defendant's Position**

All damages are in dispute. Westwood does not concede Plaintiff is entitled to recover damages. Plaintiff's position above as to her damages fails to comply with LR 16.2(10) which requires that Plaintiff "shall itemize all claimed damages and shall specify damages that can be calculated from objective data".

In particular, Westwood objects to Plaintiff's position regarding economic damages. Plaintiff is not entitled to economic damages when she was prohibited, by law, from performing the duties as an LPN. Defendant discovered in May 2022 that Plaintiff's license to practice nursing as an LPN was suspended in August 2018, a fact that Plaintiff had concealed not only during the last months of her employment with Westwood but also during the discovery phase of this litigation. Plaintiff's LPN license remains suspended as of the date of this filing.

Furthermore, Plaintiff failed to mitigated her damages. Documents produced by Plaintiff indicate that she applied for approximately twenty-one jobs between January and November of 2019. On May 1, 2022, Plaintiff produced an email dated April 29, 2022 listing twenty-two businesses purportedly representing Plaintiff's job search from October 2021 to April 2022. Plaintiff applied almost exclusively for LPN and RN positions. Plaintiff holds neither license. "[A] plaintiff may not purposefully remain unemployed or underemployed in order to maximize recoverable damages in the form of lost wages." *Morris v. Clawson Tank Co.*, 459

Mich. 256, 264, 587 N.W.2d 253, 257 (1998). Furthermore, Plaintiff has failed to provide Defendant any discovery on the "medical expenses" for which she seeks recovery and failed to indicate in her Complaint, Initial Disclosures, or discovery responses that "medical expenses" were an element or component of her alleged damages.

**(11)  Trial.**

    (A)    Jury.

    (B)    Estimated length of trial:  4-5 days

**(12)  Settlement.**

The Parties attended a facilitation on December 9, 2021 with Kathy Bogas but were unsuccessful in resolving the case. On April 1, 2022, the parties attended a settlement conference with Magistrate Judge Ivy but again were unsuccessful in resolving the case.  On September 26, 2022, the Parties again attended a facilitation with Kathy Bogas but were unsuccessful in resolving the case. Finally, on December 5, 2022, the Parties again attended a settlement conference with Magistrate Judge Ivy; however, no resolution could be achieved.

**(13) Cooperation – L.R. 16.2(c)**

The Parties have all fully cooperated in the preparation of this order. The Parties acknowledge that failure to comply with this order may, in appropriate circumstances, permit the Court to "dismiss claims, enter default judgment, refuse

to permit witnesses to testify or to admit exhibits, assess costs and expenses, including attorney fees, or impose other appropriate sanctions."

**(14) Trial Briefs and Request for Jury Instructions – L.R. 16.2(d)**

In accordance with the Court's prior scheduling orders (ECF Nos. 12 and 27), pretrial submissions including proposed jury instructions, *voir dire* materials, and optional trial briefs must be submitted no later than one-week prior to the first day of trial.

**(15) Additional Requirements – L.R. 16.2(e)**

The Parties do not request any additional requirements at this time.

**(16) Juror Costs Attributable to Parties – L.R. 16.2(f)**

Undersigned counsel and the parties acknowledge that the Court may assess juror expenses in appropriate circumstances under LR 38.2.

Dated: December 8, 2022

_s/Gershwin A. Drain_____
U.S. DISTRICT COURT JUDGE

30

Respectfully submitted,

MILLER COHEN, PLC

By:   */s/ Keith D. Flynn*
      Keith D. Flynn (P74192)
      Andrea M. Frailey (P82466)
      *Attorneys for Plaintiff*

HONIGMAN LLP

By:   */s/ Mahja D. Zeon*
      Mahja D. Zeon (P83619)
      Khalilah V. Spencer (P63933)
      *Attorneys for Defendant*

31