UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ZELMA MOTLEY

Plaintiff

v.

METRO MAN I, D/B/A
WESTWOOD NURSING CENTER

Defendant.

_____/

Case No. 20-cv-11313

U.S. DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

HON. CURTIS IVY, JR.
UNITED STATES MAGISTRATE JUDGE

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S SECOND MOTION FOR SANCTIONS [ECF NO. 97]

### I. INTRODUCTION

On December 5, 2022, Plaintiff filed a Second Motion for Sanctions [ECF No. 97]. Defendant responded on December 7, 2022 [ECF No. 98], and Plaintiff filed a reply on the same day [ECF No. 99]. The motion is fully briefed. Upon review of the parties' submissions, the Court concludes oral argument will not aid in the resolution of this matter. Accordingly, the Court will resolve the motion on the briefs. See E.D. Mich. L.R. 7.1(f)(2).

Plaintiff requests sanctions against Defendant for failure to comply with a discovery order entered by Magistrate Judge Ivy. She asks the Court to prohibit Defendant from mentioning at trial any of Plaintiff's licenses, certificates, or other

-1-

similar qualifications entirely, including whether Plaintiff's license was in good standing at any point with any sort of certification agency, federal, independent, or otherwise. [ECF No. 97, PageID.2133].

For the reasons stated below, the Court **GRANTS** Plaintiff's motion in part and **DENIES** it in part.

## II. Procedural Background

Five different law firms have made appearances on behalf of Defendant in this matter. The Court granted motions to withdraw for four of them. Current defense counsel, Mahja Zeon, entered an appearance on November 18, 2022.

On October 26, 2022, Magistrate Judge Ivy issued an Order Granting in Part Plaintiff's Motion to Compel [ECF No. 59] and Terminating as Moot Plaintiff's Motion to Compel [ECF No. 61]. See [ECF No. 70].

There were five of Plaintiff's discovery devices at issue in the motion to compel. The Court's pertinent rulings as to each of those devices are summarized below.

1. **<u>Interrogatory 23</u>**: "This interrogatory seeks a description of efforts Defendant undertook since January 1, 2012, to ensure all licensed employees were properly licensed, including any audits/investigations performed by Defendant or the State, all policies and procedures related to the efforts to ensure licensure, and all documents related to this interrogatory. Defendant must supplement its answer to include the 2017 [State] investigation [related to Defendant's list of nurses and understaffing issues]." [ECF No. 70 PageID.1218]. "If Plaintiff has received all possible documents from its subpoenas to the State, then Defendant need not provide any. If there are documents outstanding, Defendants must respond accordingly." [Id]

2. **Requests for Production, Second Set, No. 2 ("Policy RFP")**: "RFP No. 2 asks for copies of policies or procedures relating to licensure of Defendant's licensed personnel since January 1, 2012 ... In other responses, Defendant stated it did not have policies in place regarding licensure during Plaintiff's employment. For that period, if there are no documents to produce, then the Court cannot compel production. From Defendant's answer it is unclear if there are responsive documents from the period outside of Plaintiff's employment. If there are, they must be produced within 14 days of this Order." [Id. at PageID.1222].

3. **Requests for Production, Second Set, Nos. 7, 8, and 9 ("State Documents RFP")**: "Defendant must produce any documents related to any State investigations or audits or state that they have nothing more to produce than what Plaintiff got directly from the State." [Id.].

4. **Requests for Production, Third Set, No. 1 ("Personnel Files RFP")**: "Request 1 seeks personnel files for all of Defendant's licensed personnel working at the Westwood nursing facility from January 1, 2015, through December 31, 2019 . . . Plaintiff asserts that it is not clear if the files previously produced cover the entire scope of the [RFP]; Defendant declined to provide confirmation to Plaintiff. If the produced files cover the scope of RFP No. 1, Defendant must confirm that to Plaintiff. If not, Defendant must produce the files requested." [Id. at PageID.1223]. The scope of this RFP is limited to nurses and LPNs at the facility. [Id. at PageID.1223-1224].

5. **Requests for Production, Third Set, Nos. 2, 4, and 5 ("Employment Positions RFP"):** "Defendant must supplement production to provide a list of vacant positions with job descriptions or qualifications during the relevant period." [Id. at PageID.1225].

The Order also denied as moot Plaintiff's Motion to Compel the Fed. R. Civ. P. 30(b)(6) deposition because during a status conference, "the parties confirmed that the witness has been identified, [and] they [only] need[ed] to select a mutually agreeable date for the deposition." [Id. at PageID.1225-26]. The Court ordered the parties to schedule the deposition "as soon as practicable." [Id].

On November 2, 2022, the Court ordered Defendant to produce discovery documents by November 9, 2022, and to schedule Fed. R. Civ. P. 30(B)(6) depositions during the week of November 14, 2022. [ECF No. 71, PageID.1228-29].

On November 17, 2022, Plaintiff filed its first Motion for Sanctions for Defendants Failure to Comply with the Court Order Regarding Motion to Compel. Plaintiffs argued that the supplemental responses Defendant submitted pursuant to the Court's October 26, 2022 order were either deficient or Defendant failed to provide supplemental responses to some requests.

As a sanction for Defendant's failure to comply with the discovery order, Plaintiff sought an order to remove the licensure issue from trial. She argued that an order for Defendant to comply and further supplement responses "would continue to prejudice her because trial was less than two weeks away." [ECF No. 89, PageID.1659-60].

On November 30, Judge Ivy entered an Order Granting in Part Plaintiff's Motion for Sanctions. [ECF 89]. The Court's conclusions are summarized below.

1. **<u>Interrogatory No. 23</u>**: "Defendant's argument that it does not have more documents to produce ignores the Order that requires a supplemental response to all parts of Interrogatory No. 23 with information from the 2017 investigation or audit. **Defendant did not comply with the Order**." [ECF No. 89, PageID.1657] (emphasis added).

2. **Regarding the Policy RFP and the State Documents RFP**: "In its supplemental response, Defendant referred to its original response and stated it did not have additional responsive documents. (ECF No. 78-3, PageID.1615-17). Though untimely, **Defendant complied with the Order** and stated it did not have more documents to produce." [ECF No. 89, PageID.1657] (emphasis added).

3. **Regarding the Personnel Files RFP**: "Defendant produced 4,766 pages of responsive documents on November 15, 2022, less than two weeks before trial [and after the deadline set in the Court's discovery order]. (ECF No. 78, PageID.1574). "**Since Defendant supplemented its response with responsive documents, no sanctions will be awarded here**." [Id. at PageID.1661] (emphasis added).

4. **Regarding the Employment Positions RFP**: "Defendant . . . stated it did not have additional responsive documents. Perhaps there were no further job vacancies during the relevant period other than those previously identified.[1] . . . The Court ordered that job descriptions and qualifications also be provided with the list of vacancies. It is difficult to credit the response that Defendant does not have a job description or job qualifications list for each of the vacancies it had during the relevant period. Even if there were no standalone documents listing the description and/or qualifications, the company most likely had a description or list of qualifications for each job, or at least one can surely be created. **Because Defendant did not provide job descriptions or qualifications, it did not comply with the Order.**" [ECF No. 89, PageID.1659] (emphasis added).

Judge Ivy found that Defendant violated the discovery order pertaining to Interrogatory 23 and the Employment Positions RFP only.

---

[1] The Court also warned: "While Plaintiff finds it incredible that Defendant had only four vacancies during the relevant period, no evidence has been produced to call into doubt that representation. Should facts emerge that establish there were more vacancies which Defendant did not disclose, Defendant may be subject to sanctions." [ECF No 89, PageID.1658].

Notably, Judge Ivy declined Plaintiff's request to remove the licensure defense from trial. He found, among other things, that the information missing from Interrogatory No. 23 related to the 2017 investigation or audit did not appear to be case or defense determinative. [ECF No. 89, PageID.1661]. He also found that Plaintiff should be able to review the supplemental documents pertaining to the Employment RFP in time to prepare for trial. [ECF No. 89, PageID.1661].

The Court ordered the Defendant to supplement its responses to Interrogatory 23 and the Employment Positions RFP by the close of business on December 5, 2022, and to pay the reasonable costs and attorney fees Plaintiff incurred in bringing the motion for sanctions. [Id. at PageID.1660].

In her present motion, Plaintiff does not raise issues pertaining to the discovery Order Granting in Part Plaintiff's Motion for Sanctions. [ECF No. 97, PageID.2146]. Instead, Plaintiff argues that Defendant violated the Court Order Granting Plaintiff's Motion to Compel [ECF No. 70].

Neither of the parties objected to any of the rulings or findings in Judge Ivy's Order Granting In Part Plaintiff's Motion for Sanctions. The Court adopts Judge Ivy's rulings by reference.

### III.   Law and Analysis

Plaintiff asks the Court to bar Defendant from asserting its after-acquired evidence defense pursuant to Fed. R. Civ. P. 37.

### A. Fed. R. Civ. P. 37 Standard

The district court has wide discretion in determining an appropriate sanction under Rule 37. *National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 643 (1976).

If a party or a witness designated under Rule 30(b)(6) fails to obey an order to provide or permit discovery, the court where the action is pending may issue further just orders. Fed. R. Civ. P. 37 (b)(2)(A). Among others, this includes: (i) directing that the matters embraced by the prevailing party in the order or other designated facts be taken as established; or (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence. Fed. R. Civ. P. 37 (b)(2)(A)(i)-(ii).

On motion, the court where the action is pending may order sanctions if: (i) a party or a party's officer—or a person designated under Rule 30(b)(6)—fails, after being served with proper notice, to appear for a deposition; or (ii) a party, after being properly served with interrogatories or a request for inspection fails to serve its answers, objections, or written response. Fed. R. Civ. P. 37 (d)(1)(A).

A failure described in Rule 37(d)(1)(A) is not excused on the ground that the discovery sought was objectionable unless the party failing to act has a pending motion for a protective order under Rule 26(c). Id.

Sanctions may include any of the orders listed in Rule 37(b)(2)(A)(i)-(vi). Instead of or in addition to these sanctions, the court must require the party who failed to act to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified, or other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(d)(3).

The purpose of imposing sanctions is to assure both future compliance with the discovery rules and to punish past discovery failures, as well as to compensate a party for expenses incurred due to another party's failure to properly allow discovery." *Jackson v. Nissan Motor Corp.*, 888 F.2d 1391 (6th Cir. 1989) (quotation omitted).

In determining whether sanctions are appropriate pursuant to Rule 37, the Sixth Circuit looks to four factors. First, whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault. Second, whether the party in favor of the sanction was prejudiced by the other party's failure to cooperate in discovery. The third factor is whether the party was warned that failure to cooperate could lead to sanctions.

Finally, the fourth factor pertains to dismissal or default as a sanction: whether less drastic sanctions were first imposed or considered. *Freeland v. Amigo*, 103 F.3d 1271, 1277 (6th Cir. 1997).

Plaintiff claims that, since filing her First Motion for Sanctions, she has discovered additional evidence demonstrating Defendant's violation of the Court's Order Granting Plaintiff's Motion to Compel, thereby necessitating the current motion. [ECF No. 97, PageID.2146].

The Court will discuss whether any of Defendant's response to Plaintiff's discovery devices warrant sanctions.

### B. The Policy RFP

Defendant has maintained that it had no written policy regarding the licensure of its personnel that was not already produced.

However, Plaintiff says that, during depositions on December 1, 2022, two of Defendant's corporate representatives testified as to the existence of: "(1) a list of licensed personnel maintain[ed] by Defendant [,] and (2) a binder containing Defendant's policies [pertaining] to the licensure of its licensed personnel." [ECF No. 97, PageID.2152]. Plaintiff says Defendant has known about the existence of the written policies since May 27, 2022. [ECF No. 97, PageID.2153].

Mr. Mawthi testified Defendant had a list of employees who were licensed that it gives to the State or other public entities who request it as part of an annual survey. [ECF No. 99-3, PageID.2764]. He did not testify that the list Defendant maintains dates back to the relevant time period of the Policy RFP or that it was in possession of any lists not already produced to Plaintiff.

-9-

He also testified that when Defendant gets new employees, those individuals get a new nursing license, they make a copy of their license, it goes in the binder, and Defendant adds the name of the new employee to a spreadsheet. [Id. at PageID.2732]. But this practice is not written down anywhere. [Id].

According to Defendant, it produced the personnel record of each of its licensed personnel, terminated personnel, and the personnel files of any individuals employed during the respective time period. And Defendant still maintains that it has no written policy pertaining to its licensed personnel.

Thus, as it pertains to the Policy RFP, Defendant did not violate the discovery order and sanctions would not be appropriate.

### C. Interrogatory 23 and The State Documents RFP

Plaintiff argues that, with 72 hours left before trial, Defendant changed one of its previous responses to Interrogatory 23, which stated that no one in Defendant's organization handled licensure review. After change, Defendant asserts that its human resources department monitors licenses. [ECF No. 101-1, PageID.2888]. This leaves Plaintiff with no time to depose any one in Defendant's human resources department.

Plaintiff's next argument pertains to the State Documents RFP. She argues that Defendant's Chief Operating Officer and Rule 30 (b)(6) representative Mr.

-10-

Mwathi testified that while there were annual surveys—other than the 2017 licensure survey—that were not produced.

Plaintiff says Mr. Mawthi believed they were not licensure surveys, so he unilaterally deemed them to be non-responsive to the State Documents RFP. Plaintiff claims Mr. Mwathi eventually admitted that the annual surveys touched on issues such as Defendant being short-staffed with regard to licensed personnel. Mr. Mwathi testified that every 3-5 years Defendant has a licensure survey.

Defendant says that the failure to provide the licensure surveys was inadvertent and that Mr. Mwathi did not understand that he needed to provide all surveys that audited an employee's license. After Mr. Mwathi's deposition, Defendant provided Plaintiff with all annual surveys.

On balance, it does not appear that Defendant's noncompliance was due to bad faith or willfulness. "Rule 37 should not be construed to authorize dismissal ... when it has been established that failure to comply has been due to inability, and not to willfulness, bad faith, or any fault...." *Harmon v. CSX Transp., Inc.*, 186 Fed.Appx. 624, 632, 2006 WL 1792413 (6th Cir. 1997).

As such the Court Defendant's response to the State Documents RFP does not warrant a complete bar to prohibit Defendant from asserting its after-acquired evidence defense.

Given that the surveys were not produced and the human resources employee not identified until days before trial, Defendant failed to comply with the Order Granting Plaintiff's Motion to Compel. Plaintiff has been prejudiced by Defendant's noncompliance because Plaintiff had little time to review surveys or depose Defendant's human resources employee.

For these reasons, the Court will order Defendant to pay Plaintiff's reasonable costs associated with bringing its second motion for sanctions. This includes attorney's fees.

Lastly, Plaintiff says that during his deposition, Mr. Mwathi testified that Defendant had not conducted a thorough search for documents in response to the State Documents RFP.

The Court ordered Defendant to produce any documents responsive to the State Documents RFPs. This RFP asked for "internal or external documents regarding audits or investigations by the State since January 1, 2012, and communications with employees or agents regarding an audit or investigation." [ECF No. 70, PageID.1222]. In its supplemental responses, Defendant asserted that it could not find additional responsive documents. During his deposition, however, Mr. Mwathi testified that Defendant did not search the emails of any of its employees. [ECF No. 101-2, PageID.2917].

While Defendant offers no persuasive good faith explanation for this noncompliance with the Court's orders, Plaintiff makes no showing of prejudice that warrants a complete bar to Defendant's after-acquired evidence defense. Defendant searched the account where external documents regarding the licensure of its employees would be located, and it produced its annual surveys and personnel records. The Court believes any prejudice emanating from Defendant's noncompliance has been minimized to a reasonable extent.

Defendant was warned that undisclosed documents subject to discovery requests would result in sanctions. See [ECF No 89, PageID.1658].

Thus, a sanction ordering Defendant Westwood Nursing Center to pay Plaintiff's reasonable costs, including attorney's fees, incurred in bringing its second motion to compel is more appropriate and less drastic than an outright bar prohibiting Defendant from asserting its defense.

### D. Fed. R. Civ. P. 30 (b)(6) Depositions

Plaintiff argues that Defendant did not adequately prepare either of its corporate representatives for their Rule 30 (b)(6) depositions. Those representatives were Defendant's former Administrator and Regional Director of Operations, Cassandra Fuller; and Defendant's Chief Operating Officer, Michael Mwathi.

It is "well-established" that an organization must "produce a witness knowledgeable about the subjects in the notice and to prepare that witness to testify not just to his/her own knowledge, but the [organization's] knowledge." *Conrail v. Grand Trunk W. R.R. Co*., 853 F.Supp.2d 666, 670 (E.D. Mich. 2012).

A 30(b)(6) witness testifies as to the collective knowledge and information known or reasonably available to the corporation, and in preparation may be required to gather documents, interview witnesses, and become familiar with each topic to which he will be called upon to testify. *See Rivet v. State Farm Mut. Auto. Ins. Co*., 316 Fed.Appx. 440, 447 (6th Cir. 2009) (quoting Fed. R. Civ. P. 30(b)(6)).

While absolute perfection is not required of a witness delegated as knowledgeable in the areas of inquiry listed in deposition, producing an unprepared witness is tantamount to a failure to appear, which may warrant sanctions. Fed. R. Civ. P. 30(b)(6) & 37(d); *Wicker v. Lawless*, 278 F. Supp. 3d 989 (S.D. Ohio 2017).

Defendant designated Ms. Fuller to testify regarding topics 1 and 3 of the noticed deposition topics below for the period 2014-early 2016, and Mr. Mwathi to testify on all other topics. The topics read:

1. Metro Man I, Inc. d/b/a Westwood Nursing Center's ("Westwood") policies and procedures relating to the licensure of its employees in effect since January 1, 2012.

2. All efforts taken by Westwood since January 1, 2017 to ensure, verify, and/or track the licensure of its employees.

3. Any investigations or audits performed by the State of Michigan regarding Westwood's licensed personnel.

4. The licensure survey conducted in March 2017 which necessitated a letter of non-compliance from the Michigan Department of Licensing and Regulatory Affairs (LARA).

5. Any licensure surveys conducted by LARA since the March 2017 survey including the follow-up survey where LARA stated, "Actual compliance will be verified at the time of the next onsite licensure survey."

[ECF No. 97-2, PageID.2179].

### 1. Ms. Fuller

Ms. Fuller testified that she did not receive a copy of the deposition topics until November 30, the day before her deposition. [ECF No. 101-3, PageID.2961]. She also testified that her preparation consisted of reading the transcript of her previous deposition, briefly reviewing the deposition re-notice, and a ten-minute conversation with Ms. Zeon, current counsel. [Id].

On topic 1, Plaintiffs claim Ms. Fuller testified that: (1) she did not know any details about how Defendant monitored the licenses of its personnel; (2) she did not know how often Defendant updated this list of licensed personnel or its process for doing so; and (3) she had no knowledge regarding the State investigations and audits. But she testified that relevant documents could be found

in a database named "Epoch." Defendant does not dispute Plaintiff's recitation of Ms. Fuller's testimony.

Ms. Fuller was unable to answer basic questions about things directly related to her assigned topics but not within her personal knowledge. This falls short of what was required of Ms. Fuller, and by extension what was required of Defendant under Rule 30(b)(6).

Under the Rule, Defendant had an obligation to designate a deponent who could "testify about information known or reasonably available to the organization." *See Lloyd v. Midland Funding*, LLC, 639 F. App'x 301, 305 (6th Cir. 2016); *See also Oro BRC4, LLC v. Silvertree Apartments*, No. 2:19-CV-4907, 2021 WL 2373667, at *5 (S.D. Ohio June 10, 2021) (granting sanctions—even though the witness only had two days to prepare for the deposition—because the witness was unable to testify about topics not within his personal knowledge and the only things he did to prepare included going through his own emails, talking to counsel, and obtaining a police report).

The Court finds that Ms. Fuller was not adequately prepared for the deposition. This failure is not substantially justified either. Current Defense counsel claims that, on November 18, 2022, she confirmed the names of the deponents and that they would be available for the December 1, 2022 deposition. She says she asked that subpoenas be sent to her, but Plaintiff's counsel did not

respond until November 28, 2022. Plaintiff's counsel did not send the actual deposition notices and topics to Ms. Zeon until November 30, 2022, less than 24 hours before the scheduled depositions.

Clearly, Ms. Zeon's failure to adequately prepare Ms. Fuller for the deposition was inadvertent.

The same cannot be said for Defendant Westwood Nursing Center. While Ms. Zeon credibly states that she did not know about the deposition topics until 24 hours before it was scheduled to occur, Defendant Westwood Nursing Center filed a brief that contained no explanation for why it did not take steps to assure that its representatives were adequately prepared for the deposition.

Two of Defendant's former attorneys received the deposition notice and topics in September and—before they withdrew due to breakdowns in the attorney client relationships—they presumptively informed Defendant of its obligation to assure that it had representatives that could testify about the topics in the notice.

Ms. Zeon is the fifth attorney to enter an appearance on behalf of Defendant in this matter. As Plaintiff points out, it is unlikely that four separate attorneys decided to withdraw from this case due to no fault of Defendant.

Ms. Fuller was not adequately prepared for her deposition and Plaintiff faced prejudice as a result. Had these witnesses been adequately prepared, the

depositions likely would have revealed discoverable information. Sanctions are in order.

### 2. Mr. Mwathi

Mr. Mwathi testified that, in preparation for his deposition he reviewed the deposition re-notice and had a conversation with Ms. Zeon. He also indicated that he did not review any other documents, speak with any other employees, or make any additional fact-finding efforts to prepare for his deposition. [ECF No. 101-2, PageID.2900]. Mr. Mwathi began working at Westwood Nursing Center in 2022 but topics in the deposition notice date back to 2012.

Regarding topics 1 and 2, the Court finds that Mr. Mwathi was adequately prepared. By Plaintiff's own admission, he testified that Defendant maintains a list of its licensed personnel. [Id]. Mr. Mwathi testified that, in December, the Human Resources department ("HR") checks the status of its licensed personnel to see which licenses need to be renewed and reminds those individuals. [ECF No. 101-2, PageID.2895]. Plaintiff says that beyond this, Mr. Mwathi could not provide details of how HR monitors the licenses. Id. Instead, he stated that HR's job description describes how they are to monitor licenses. [Id. at PageID.2900].

Plaintiff says that, when asked what Defendant does if one of its nurses' licenses lapsed, Mr. Mwathi testified that Defendant takes her off the schedule until she can provide a copy of the renewed license. [ECF No. 101-2, PageID.2905]. When asked the same question but regarding suspended licenses, he testified that Defendant's actions would depend on the reason for the suspension. [Id].

Mr. Mwathi testified that if a nurse was suspended for narcotics abuse, patient abuse, or other "crimes," a nurse would be automatically terminated. [ECF No. 101-2, PageID.2910]. In all other situations, the decision on whether to terminate would be made by the Nursing Home Administrator and Director of Nursing. Plaintiff believes Mr. Mwathi was not adequately prepared because he could not testify as to what these two individuals would have done about Plaintiff during the relevant time period.

Mwathi preparation is not inadequate merely because he was not able to answer certain questions related to topics 1 and 2. Notably, a Rule 30(b)(6) witness is not expected to perform with absolute perfection, and the inability of such a witness to answer every question on a particular topic does not necessarily mean that the corporation failed to comply with its obligations under the Rule. *Davis Elecs. Co. v. Springer Cap*., LLC, 2022 WL 904609, at \*14 (W.D. Ky. Mar. 28, 2022).

In other words, "while the Rule is not a memory contest, the corporation has a clear duty to make a good faith, conscientious effort to designate appropriate persons and to prepare them to testify fully and in a non-evasive fashion about the matters for examination." *Id*. Regarding topics 1 and 2, Defendant clearly made a good faith to adequately prepare Mr. Mwathi for his deposition.

On topics 3, 4, and 5, Mr. Mwathi testified that, for the 2017 State survey, he knew about Exhibit 1 to the deposition notice. [ECF No. 101-2, PageID.2900]. He could not describe what steps Defendant took to comply with the results of the survey, he could not describe the plan for compliance submitted to the State, nor could he identify which of Defendant's employees worked on the survey. [ECF No. 101-2, PageID.2900]. As with Ms. Fuller, Mr. Mwathi could not answer basic questions directly related to the topic areas that were not within his personal knowledge.

Defendant relies on the changes in counsel to explain the inadequacy. But the Court rejects this justification for the same reasons stated above.

Sanctions are warranted. But the Court believes that sanctions requiring Defendant to pay Plaintiff's reasonable costs incurred in bringing her Second Motion for Sanctions is adequate to punish the discovery violation and deter future violations. Plaintiff's reasonable costs include attorney's fees.

## IV.    Conclusion

The Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Second Motion for Sanctions.

The Court **WILL NOT** remove licensure issues or Defendant's after-acquired evidence defense from trial.

**IT IS FURTHER ORDERED** that Defendant will pay Plaintiff's reasonable cost, including attorney's fees, incurred in bringing her Second Motion for Sanctions.

Plaintiff is ordered to file a bill of costs detailing the expenses and attorney's fees she incurred in bringing the motion.

**IT IS SO ORDERED.**


Dated: December 12, 2022 /s/ Gershwin A. Drain
GERSHWIN A. DRAIN
UNITED STATES DISTRICT JUDGE


CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
December 12, 2022, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager