UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ZELMA MOTLEY

Plaintiff

v.

METRO MAN I, D/B/A
WESTWOOD NURSING CENTER

Defendant.

Case No. 20-cv-11313

U.S. DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

HON. CURTIS IVY, JR.
UNITED STATES MAGISTRATE JUDGE

_____/

## OPINION AND ORDER: (1)  GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS'  FEES AND COSTS [ECF NO. 121]; AND (2) GRANTING IN PART PLAINTIFF'S MOTION TO REVIEW CLERK'S ACTION [ECF NO. 123]; AND AMENDING JUDGMENT

### I.  Introduction

After more than two and a half years of litigation, Plaintiff prevailed at trial.

The jury found in her favor on her claim of retaliation in violation of the

Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, et seq., her claim of

retaliation in violation of the Michigan Persons with Disabilities Civil Rights Act

(PWDCRA), M.C.L. § 37.1101, et seq. and her claim of discrimination in violation

of the Michigan Elliott-Larsen Civil Rights Act (ELCRA). Plaintiff had an

additional discrimination claim under the ADA and PWDCRA on which she did

not prevail. After a six-day trial, the jury awarded Plaintiff Zelma Motley $265,000 in total damages. [Id]. The Court entered Judgment on January 4, 2023.

Before the Court is Plaintiff's Motion for Attorneys' Fees and Costs [ECF No. 121]. It was filed on February 1, 2023. Defendant responded on February 15, 2023 [ECF No. 129] and Plaintiff replied on February 22, 2023 [ECF No. 130]. Plaintiff's Motion to Review Clerk's Action re: Bill of Costs [ECF 120] is also before the Court. It was filed on February 8, 2023. Defendant responded on February 22, 2023 [ECF No. 131] and Plaintiff replied on March 1, 2023 [ECF No. 132]. The Court held oral argument on June 9, 2023.

For the reasons stated below, Plaintiff's Motion for Attorneys' Fees and Costs is **GRANTED IN PART** and **DENIED IN PART**. The Motion to Review Clerks Action is **DENIED**.

## II. Factual Background

The facts of this case are well known to the parties and a brief summation here will suffice. Plaintiff worked as a Licensed Practical Nurse with Defendant. After several conversations about her use of a cane to help her ambulate at work and a statement made by the Director of Nursing along the lines of: "if you would lose some weight, you wouldn't have that problem," in reference to the cane usage, Plaintiff was terminated. Other events also took place before her termination that are not pertinent to this motion.

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") after she was terminated by her job. [ECF No. 52, PageID.350]. On January 10, 2020, the EEOC issued its determination, along with a proposed Conciliation Agreement, where it found reasonable cause to believe that Defendant violated the ADA when it terminated Plaintiff's employment. [ECF No. 52-2, PageID.366]. About a month later, the EEOC issued Plaintiff a Notice of Right to Sue, referencing "Conciliation Failure" in its heading and a reasonable cause determination. [ECF No. 52, PageID.350].

Plaintiff filed this lawsuit on May 26, 2020. Defendant has been inattentive and less than diligent in litigating this matter. From the outset, the Court had to extend discovery deadlines and order Defendant to respond to certain discovery motions. Five different law firms have made appearances on behalf of Defendant in this matter. The Court granted motions to withdraw for three of them based on breakdowns in the attorney-client relationship. The Court set a hearing on one of these motions for January 3, 2022 and ordered Defendant to send a corporate representative to the hearing. Defendant failed to do so, which resulted in the Court ordering Defendant to show cause for why a default judgment should not be entered against it. [ECF No. 41, PageID.289]. Defendant responded and satisfied the show cause order; however, the lack of diligence did not end there.

The Court attempted to hold a Final Pretrial Conference on November 2, 2022. After this attempted conference, the Court ordered Defendant to pay costs in the amount of $250 because it had failed to send a person with full settlement authority to attend, as required by an earlier Court order. See [ECF No. 71, PageID.1229 [citing ECF No. 54, PageID.421]]. There was also at least one time when Defendant failed to send a representative with settlement authority to a mediation with Magistrate Judge Ivy. The Court adjourned the scheduling order dates several times throughout the course of this litigation, including the dispositive motion cutoff date. See [ECF Nos. 12, 22, 27, and 54]. Curiously, however, Defendants elected not to file a dispositive motion, despite disputing liability at previous status conferences and settlement conferences.

Plaintiff was awarded sanctions twice. Judge Ivy awarded half of the reasonable costs and attorney's fees incurred in bringing a Motion for Sanctions due to failure to "fully comply with the Court's discovery Order" related to a request for production of documents. [ECF No. 89, PageID.1660]. The Court again awarded sanctions pursuant to Plaintiff's Second Moton for Sanctions, filed in relation to an unfulfilled request for production, the Court found that:

> Given that the surveys were not produced and the human resources employee not identified until days before trial, Defendant failed to comply with the Order Granting Plaintiff's Motion to Compel. Plaintiff has been prejudiced by Defendant's noncompliance because Plaintiff had little time to review surveys or depose Defendant's human resources employee. For these reasons, the Court will order

> Defendant to pay Plaintiff's reasonable costs associated with bringing
> its second motion for sanctions. This includes attorney's fees.

[ECF No. 107, PageID.3146-7]. The Court also awarded these sanctions based on Defendant's failure to adequately prepare its witnesses for Fed. R. Civ. P. 30(b)(6) depositions. [Id].

Overall, this action involved numerous depositions, the production of thousands of pages in documents, and non-dispositive motion practice. It was also discovered during the course of litigation that Plaintiff had been working for Defendant while her nursing license was expired. This made the after acquired evidence doctrine relevant and the parties were required to submit briefing.

As a result of this litigation, Plaintiff says her attorney's fees total $210,405 and her costs total $7,771.14. She says she is also entitled to 4.73% in post-judgment interest per day from the date of judgment until it is paid in full. The Court will discuss the reasonableness of these fees and costs and whether Plaintiff is entitled to the full amount.

### III.   Analysis

#### a.  Attorneys' Fees

"[P]arties are ordinarily required to bear their own attorney's fees," "absent explicit statutory authority." *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res*., 532 U.S. 598, 602–03, (2001). The ADA, PWDCRA, and ELCRA all allow the Court, in its discretion, to award a prevailing

party their reasonable attorneys' fees and costs. See 42 U.S.C. § 12205 ("In any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs"); M.C.L § 37.1606(3) ("A person alleging a violation of [the PRWCRA] may bring a civil action for [reasonable attorneys' fees]"); see also M.C.L. § 37.2802 ("A court, in rendering a judgment in an action brought pursuant [to the ELCRA], may award all or a portion of the costs of litigation, including reasonable attorney fees and witness fees, to the complainant in the action if the court determines that the award is appropriate.").

Although the explicit language of these statutes states that the decision of whether and in what amount to award attorneys' fees to the prevailing party in an action under these statutes is addressed to the court's discretion. *Disabled Patriots of Am., Inc. v. Taylor Inn Enterprises, Inc*., 424 F. Supp. 2d 962 (E.D. Mich. 2006). The Courts "must provide a clear and concise explanation of its reasons for the fee award." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000) (quotation and citation omitted). The Supreme Court has directed that "a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley*, 461 U.S. at 429 (citation omitted).

The "fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *City of Highland Park v. Env't Prot. Agency*, No. 2:16-CV-13840, 2022 WL 67462, at *2 (E.D. Mich. Jan. 6, 2022). "In an attorneys' fee case, the primary concern is that the fee awarded be 'reasonable.' A reasonable fee is 'adequately compensatory to attract competent counsel yet.... avoids producing a windfall for lawyers.' " *Gonter v. Hunt Valve Co*., 510 F.3d 610, 616 (6th Cir. 2007) (emphasis and internal citation omitted) (quoting *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999); see *City of Highland Park v. Env't Prot. Agency*, No. 2:16-CV-13840, 2022 WL 67462, at *1 (E.D. Mich. Jan. 6, 2022).

The Court begins its attorneys' fee award calculation by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The calculation provides the Court with the "fee applicant's 'lodestar.' " *Adcock-Ladd*, 227 F.3d at 349 (citations omitted). The Court may, "within limits, adjust the 'lodestar' to reflect relevant considerations peculiar to the subject litigation." *Id*. (citation omitted). The Sixth Circuit considers twelve *Johnson* factors when analyzing the Court's adjustment of a fee award. *Reed v. Rhodes*, 179 F.3d 453, 471–72 (6th Cir. 1999) (citing *Johnson v. Ga. Highway Express, Inc*., 488 F.2d 714, 717–19 (5th Cir. 1974)). The twelve factors are:

(1) The time and labor required;

(2) The novelty and difficulty of the questions;

(3) The skill requisite to perform the legal service properly;

(4) The preclusion of other employment by the attorney due to acceptance of the case;

(5) The customary fee;

(6) Whether the fee is fixed or contingent;

(7) Time limitations imposed by the client or the circumstances;

(8) The amount involved, and the results obtained;

(9) The experience, reputation, and ability of the attorneys;

(10) The "undesirability" of the case;

(11) The nature and length of the professional relationship with the client; and

(12) Awards in similar cases.

488 F.2d at 717–19.

The Court will apply these factors in determining the amount of Plaintiff's award of attorneys' fees in this case. Defendant contests Plaintiff's motion on three grounds: (1) Plaintiff is seeking an unreasonable number of hours billed; (2) Plaintiff admits to a contingency fee agreement; and (3) Plaintiff has not fully documented the reasonableness of its hourly rates. [ECF No. 129, PageID.4248-49].

### 1.  Factor 1: Time and Labor Required By the Case

Plaintiff says her attorneys spent 742.3 hours on this case over the nearly three and a half years, starting with the complaint she filed with the EEOC. See [ECF No. 121-2]. As Plaintiff points out, this case took nearly two and a half years to litigate and required Plaintiff's attorneys to engage in lengthy discovery, draft multiple briefs for discovery motions, motions in limine, and prepare for a trial that

lasted six days.  Numerous depositions were taken by the Plaintiff, three witnesses testified at trial, and one deposition was read into the record.

Defendant refutes Plaintiff's assertion, arguing that Plaintiff is seeking an unreasonable number of hours billed. Defendant lists 15 bullet points for hour entries. It says the "block billing utilized by Plaintiff's counsel makes it difficult to determine how much of these items are reasonable." [ECF No. 129, PageID.4248]. The entries, as mentioned in Defendant's motion, are:

1. 3 hours for drafting a demand letter. Plaintiff's Exhibit B, ECF  121-2, PageID 3739.

2. Two attorneys billing nearly 13 hours on drafting and revising the complaint. Plaintiff's Exhibit B, ECF 121-2, PageID 3740.

3. Two attorneys billing 14 hours on a motion to compel. Plaintiff's Exhibit B, ECF 121-2, PageID 3741.

4. 5 hours of deposition preparation for a 3.5-hour deposition of plaintiff. Plaintiff's Exhibit B, ECF 121-2, PageID 3742.

5. 7 hours of deposition preparation. Plaintiff's Exhibit B, ECF 121-2, PageID 3743.

6. 21.7 hours of further "prepare and attend" depositions. Plaintiff's Exhibit B, ECF 121-2, PageID 3743.

7. Two lawyers billing 10.5 hours for work on the joint final pretrial order – before even sending it to opposing counsel. Plaintiff's Exhibit B, ECF 121-2, PageID 3743.

8. 1.9 hours billed to draft a response to a motion in limine, but 3 hours to review it (no revisions noted). Plaintiff's Exhibit B, ECF 121-2, PageID.3744.

9.  12.1 hours to review LARA subpoena responses. Plaintiff's Exhibit B, ECF 121-2, PageID 3745.

10. Two attorneys billing 8.5 hours to attend the same mediation. Plaintiff's Exhibit B, ECF 121-2, PageID 3746-47.

11. Two attorneys billing 5.2 hours to prepare for the same deposition. Plaintiff's Exhibit B, ECF 121-2, PageID 3747.

12. Back to the same motions in limine that took 3 hours to previously review, billing 19.9 hours on drafting and revision responses, including one attorney billing 10.2 hours in a single day. Plaintiff's Exhibit B, ECF 121-2, PageID 3748.

13. 18.1 hours billed by one attorney on a motion for sanctions. Plaintiff's Exhibit B, ECF 121-2, PageID 3750.

14. 12 hours in one day for trial preparation by one attorney, and 16 hours for trial and further preparation in another single day. Plaintiff's Exhibit B, ECF 121-2, PageID 3751.

15. 4 separate entries totaling 13.3 hours related to trial. Plaintiff's Exhibit B, ECF 121-2, PageID 3752.

[ECF No. 129, PageID.4248]. Defendant continues its argument, suggesting that the vague line items with significant numbers of hours fail to meet plaintiff's burden of showing they are entitled to fees and an evidentiary hearing is necessary to determine what the reasonable number of hours would be for the lodestar calculation.

There are at least three entries for which "block billing" was used: (1) On 11/10/2022: "Prepared for trial, reviewed supplemental responses to discovery, and discuss case strategy with Ryan Paree" for 7 hours by Mr. Flynn; (2) On

12/11/2022: "Prepared for trial, reviewed documents, drafted questions for Lewis and Warren, and prepped with client" for 12 hours by Mr. Flynn; and (3) On 12/13/2022: "Prepared for and attended trial, motion practice, and reviewed closing argument" for 11 hours by Mr. Flynn. [ECF No. 121-2, PageID.3748, 3751-52]. Such types of entries make it difficult for the Court to determine the number of hours expended on discrete tasks, and whether that number of hours is reasonable. See *Clements v. Prudential Protective Servs., LLC*, 100 F. Supp. 3d 604, 618 (E.D. Mich. 2015), aff'd, 659 F. App'x 820 (6th Cir. 2016); Reductions in time are particularly appropriate where billing records do not segregate the work done on each specific claim and block billing is used instead. See, e.g., *Auto Alliance Int'l v. U.S. Customs Serv.*, 155 Fed.Appx. 226, 228 (6th Cir.2005).

There are 30 hours' worth of block billing entries all created by Mr. Flynn. These entries resemble the entries at issue in *Reeder* that prompted the Court to reduce an attorney's fees award by 10% because of block billing. See *Reeder v. Cnty. of Wayne*, No. 15-CV-10177, 2016 WL 6524144, at *4 (E.D. Mich. Nov. 3, 2016) (Drain, J.) ("The documentation of hours illustrates that Mr. Flynn engaged in 'block billing,' wherein long periods of multiple types of work are described in a single entry. See, e.g., Dkt. No. 62-2, pp. 29–32 (Pg. ID No. 1484–87) ('Reviewed pleadings and discovery responses in preparation for trial and researched evidentiary issues re doctors' notes and edited motions in limine and discussed trial

strategy with Adam Taub' for 8 hours; 'Reviewed new documents from D, spoke with D, reviewed voir dire, verdict form, and jury instructions and drafting powerpoint presentation' for 8 hours'"). As such, the Court will reduce the total number of hours expended on this case by 30 hours to account for the block billing entries.

As to other time entries, Plaintiff attributed specific tasks to each line item associated with the number of hours worked. Defendant essentially argues that these tasks took too long to complete and that Plaintiff counsel overbilled Plaintiff, without any explanation for why they should have been completed in a shorter time span given the difficulty or complexity of the respective motions, depositions, and mediations. When a prevailing party submits evidence of the appropriate fee—like detailed records of time entries—simple "conclusory allegations that the award was excessive, and that plaintiff's counsel employed poor billing judgment ... do not suffice to establish that there was error." *Perotti v. Seiter*, 935 F.2d 761, 764 (6th Cir. 1991). The Court is not persuaded that a reduction is warranted under the first *Johnson* factor, except for the 30-hour reduction due to block billing previously discussed.

### 2.  Other *Johnson* Factors Not Addressed by Defendant (Factors 2-4)

Defendant does not dispute Plaintiff's arguments regarding factors 2-4. Regarding the second factor, Novelty and Difficulty of the Case, Plaintiff argues

that there were several complex issues related to her case, including the impact of her suspended license on her claims. Plaintiff suggests that answering this question required research into both the after acquired evidence doctrine as well as the definition of a "qualified individual" under the ADA. Plaintiff's attorneys also say they had to subpoena multiple different state agencies and review thousands of pages of documents to fully understand the circumstances of Plaintiff's license suspension, and how those circumstances impacted her claims. These representations are uncontested by Defendant and the Court agrees with Plaintiff. The second factor weighs in favor of finding that the attorneys fees are reasonable given the difficulty of the case.

On the third factor, the Skill Needed to Perform the Legal Service Properly, Plaintiff's attorneys expended a reasonable amount of time to prepare the case and demonstrated their ability to properly perform legal services on behalf.

On the fourth factor, the Preclusion of Other Employment by the Attorney Due to Acceptance of the Case, Defendant does not contest Plaintiff's argument that Miller Cohen P.L.C is a well-renowned labor and employment law firm in Detroit representing numerous employees and labor unions in active litigation. As Plaintiff's attorneys state in their affidavits, had Plaintiff's attorneys not spent time on Plaintiff's case, they would have spent that time on another client. This factor weighs in favor of reasonableness.

Since factors five and nine are related, the Court will address them together.

### 3. Factors 5 and 9: The Customary Fee and Experience, Reputation, and Ability of the Attorneys

A trial court, in calculating the 'reasonable hourly rate' component of the lodestar computation, should initially assess the 'prevailing market rate in the relevant community.' " *Waldo,* 726 F.3d at 821. The prevailing market rate is "that rate which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Id*. A district court is permitted to "rely on a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests." *Van Horn v. Nationwide Prop. & Cas. Ins. Co*., 436 Fed.Appx. 496, 499 (6th Cir.2011); see *Dowling v. Litton Loan Servicing LP*, 320 Fed.Appx. 442, 447 (6th Cir.2009) (affirming a district court's calculation of a reasonable hourly rate based on the court's "knowledge of local billing practices" and counsel's customary billing rates). "Michigan federal courts routinely use [the State Bar of Michigan's Economics of Law Practice Survey] as evidence of reasonableness in determining attorney's fees." *Bell v. Prefix, Inc*., 784 F. Supp. 2d at 783 (E.D.Mich.2011). The most recent survey was published in 2020 and is attached to Plaintiff's motion.

Miller Cohen P.L.C is a private firm with approximately seven attorneys and is in Downtown Detroit. According to the State Bar of Michigan Economics of Law Practice Survey (the "State Bar Survey"), the customary fee for a firm located

in Downtown Detroit is between $218 (25th percentile) and $445 (75th percentile).
[ECF No. 121-3, PageID.3760]. The customary fee for labor and employment
attorneys is between $200 (25th percentile) and $375 (75th percentile). [ECF No.
121-3, PageID.3761].

The conclusions below regarding the hourly rates that each attorney will be
awarded. are based on the representations made in the affidavits attached, the
attorneys' years of practice, respective experience, location of practice, and area of
practice.

Keith Flynn, the lead attorney in this matter, is a respected, experienced, and
accomplished practitioner in employment discrimination litigation. Mr. Flynn's
reputation is well known to this Court. He handled this case from its inception
through trial with exceptional skill and has done so in other cases. He is a Senior
Associate at Miller Cohen P.L.C., head of the Employment Litigation Practice, and
has been practicing for 12 years. Based on his knowledge and experience, he
commands an hourly rate of $325.00. The median rate for an attorney with
between 11-15 years of experience $280 per hour, the 75th percentile is $350 per
hour. The rate Mr. Flynn requests falls just below the 75th percentile and the Court
finds that this fee is reasonable, given all the factors discussed above and the level
of skill he has displayed in this case and others.

Andrea Frailey, the second chair in this case, was involved in this case from April 13, 2022, through the end of trial. She is an associate with nearly five years of practice in labor and employment law in Michigan. The requested rate for Ms. Frailey is $250 per hour. She is in a similar position as Mr. Flynn was in *Reeder*, 2016 WL 6524144, where this Court awarded him attorneys fees at a rate of $225 based on his six years of practice, firm location, and area of practice at the time. The 25th percentile for attorneys with 3-5 years of practice is $195 per hour, the median is $242 per hour, and the 75th percentile is $275 per hour. The Court finds that a rate of $242 per hour is reasonable for Ms. Frailey, based on the firm location, years of experience, her involvement in this case (via motion practice, conducting depositions, and direct and cross examination at trial), and her skill in handling employment discrimination and civil rights cases.

Ryan Paree, who provided limited assistance in this matter in November and December 2022, has practiced employment and civil rights law for seven years. Mr. Paree appears to be well qualified and experienced in employment discrimination and civil rights law, but the Court has little knowledge from which to gauge his reputation and skill due to his limited involvement. For attorneys with six to ten years of experience, the 25th percentile is $200 per hour and the 75 percentile is $310 per hour. The Court finds that an hourly rate of $200 per hour is reasonable for Mr. Paree.

Judith Champa was involved in this matter from the beginning until approximately July 2021 before she took a position as an Administrative Law Judge. Unlike the other attorneys requesting attorneys' fees, she does not submit an affidavit attesting to her qualifications and background. A district court is permitted to "rely on a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests[,]" *Van Horn*, 436 Fed.Appx. at 499. It is true that a "party seeking an award of fees should submit evidence supporting the hours worked and rates claimed, and when the documentation of hours is inadequate, district court may reduce the award accordingly." *Hensley*, 461 U.S. at 434. The documentation of Ms. Champa's hours spent working on this case is adequate, as demonstrated by Ms. Frailey's affidavit attesting to the fact that she "prepared the statement of attorneys' fees using information from the firm's system for tracking attorney time and costs." [ECF No. 121-4, PageID.3773]. The statement shows that Ms. Champa spent numerous hours working on this case. [ECF No. 121-2]. Before joining Miller Cohen, Plaintiff asserts that Ms. Champa had almost two decades of experience practicing at the National Labor Relations Board.

The requested rate for Ms. Champa is $275 per hour. This rate falls between the 25th percentile ($230 per hour) and the 75th percentile ($367 per hour) for attorneys with 16-25 years of practice, and it appears that Ms. Champs has more

than two decades of experience in labor and employment matters. The Court finds that Ms. Champa's requested rate is reasonable.

The Court believes that such rates are sufficient to encourage other competent attorneys to undertake similar legal representation and is commensurate with the skills and quality of lawyering provided. *Reeder*, 2016 WL 6524144, at *6.

### 4. Factor 6: Fixed or Contingent Fee

Plaintiff says there was a contingency-based fee agreement with her counsel. The Court, however, was not provided with a copy of such agreement, but it is standard that the agreement would call for a portion of any damages award to be paid to Plaintiff's attorneys, and Plaintiff does not explain in her brief how the statutory award of fees will interplay with her contingent fee agreement. However, The Court does not believe that the contingency agreement should be dispositive in the Court's analysis of the award for statutory attorney's fee. Accordingly, using an hourly fee is appropriate to determine reasonable attorneys' fees in this case.

### 5. Factor 7: Time Limitations Imposed By the Client or the Circumstances

Plaintiff asserts that this factor is not relevant.

### 6. Factor 8: Amount Involved and the Results Obtained

The jury awarded Plaintiff $265,000 in total. Plaintiff prevailed at trial against Defendant on all claims, except her discrimination claims under the ADA

and PWDCRA. The amount of Plaintiff's jury award was not nominal or insignificant and the failure to prevail on one of her discrimination claims does not warrant a reduction in attorney fees due to her limited success. See *Deja Vu v. Metro. Gov't of Nashville & Davidson Cty., Tennessee*, 421 F.3d 417, 423 (6th Cir. 2005) ("[W]e have repeatedly rejected mechanical reductions in fees based on the number of issues on which a plaintiff has prevailed.").

According to Plaintiff, although she was awarded less than the amount for which she originally asked, that amount exceeded any settlement offer made by Defendant, the highest of which was $80,000. It is true that the Supreme Court has instructed that "the most critical factor" governing the reasonableness of a fee award "is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). In cases when "a plaintiff has obtained excellent results, her attorney should recover a fully compensatory fee." *Id*. at 435. If a plaintiff obtains "limited success, the district court should award only that amount of fees that is reasonable in relation to the success obtained." *Isabel v. City of Memphis*, 404 F.3d 404, 416 (6th Cir. 2005). The Sixth Circuit's has repeatedly admonished that "a reduction in attorney fees [awarded to a prevailing plaintiff] is to be applied only in rare and exceptional cases where specific evidence in the record requires it." *Waldo v. Consumers Energy Co*., 726 F.3d 802, 822 (6th Cir. 2013) (quoting *Isabel v. City of Memphis*, 404 F.3d 404, 416 (6th Cir. 2005)) (alteration in original). When claims

are based on a common core of facts or are based on related legal theories, for the purpose of calculating attorney fees, they should not be treated as distinct claims and the cost of litigating the related claims should not be reduced. *Waldo*, 726 F.3d 802 (6th Cir. 2013).

All of Plaintiff's claims revolved around a common core of facts and were based on related legal theories of discrimination and retaliation due to Plaintiff's weight and disability status. This case is not one of those rare and exceptional ones in which a reduced award is justified based on the Plaintiff's limited success.

### 7.  Factors 10-11: The Undesirablity of the Case and The Nature and Length of the Professional Relationship with the Client

There is nothing in the pleadings to indicate that this case was inherently undesirable, and Plaintiffs asserts that factor eleven is not relevant.

### 8.  Factor 12: Awards in Similar Cases

Plaintiff cites several cases in her motion that point to the reasonableness of the attorney's fees requested in this case. The reasonableness of a fee may also be considered in the light of awards made in similar litigation within the Sixth Circuit. *Waldo*, 726 F.3d at 822.

Plaintiff cites the *Hubbell*, where the court awarded $157,733.75 in attorneys' fees in a discrimination case ending with a five-day trial. *Hubbell v. FedEx Smartpost, Inc., No. 14-13897, 2018 WL 1392668, at *5* (E.D. Mich. Mar. 20, 2018) (Steeh, J.)., aff'd, 933 F.3d 558 (6th Cir. 2019). She cites *Lowe*, where

the Middle District of Tennessee awarded $237,420 in attorneys' fees in a disability discrimination and FMLA retaliation case which culminated in a four-day trial. *Lowe v. Calsonickansei N. Am., Inc.*, No. 1:18-cv-00027, 2022 U.S. Dist. LEXIS 93779 (M.D. Tenn. May 25, 2022). Finally, in 2016, this Court awarded another of Miller Cohen's clients $132,512.45 in attorneys' fees. *Reeder v. Cnty. of Wayne*, No. 15-cv-10177, 2016 U.S. Dist. LEXIS 152321 (E.D. Mich. Nov. 3, 2016). Defendant does not attempt to distinguish any of these cases and the Court finds that they are similar enough to favor a finding of reasonableness in this case.

### b. Post Judgment Interest

28 U.S.C. § 1961(a), governs interest on money judgments obtained in the federal district court. It provides that, "Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." *Id*; *Reeder*, No. 15-CV-10177, 2016 WL 6524144, at *7. Defendant does not dispute Plaintiff's contention that the interest rate on December 30, 2022 was 4.73%. [ECF No. 121, PageID.3734 [citing https://www.federalreserve.gov/releases/H15/data.htm]]. Plaintiff's request for post-judgment interest pursuant to 28 U.S.C. § 1961(a) at a rate of 4.73% is therefore **GRANTED**.

-21-

The Sixth Circuit has held that an award of attorney fees accrues interest, pursuant to 28 U.S.C 1961(a), "from date of judgment that unconditionally entitled prevailing party to reasonable attorney fees, rather than from date of judgment which quantified that fee award." *Associated Gen. Contractors of Ohio, Inc. v. Drabik*, 250 F.3d 482, 494 (6th Cir. 2001) (Keith, J.); *Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 587 (6th Cir. 2002). Because the award of attorneys' fees is discretionary under the discrimination statutes at issue here, a plaintiff's unconditional entitlement to attorney's fees does not commence until the court enters an order and judgment granting attorney's fees and they become payable. As such, Defendant must pay post judgment interest on the attorneys' fees award at a rate of 4.73% per day starting from the date of this Amended Judgment until the award is paid in full.

**IV.  Motion to Review Clerks' Action re: ECF No. 120 Bill of Costs [ECF No. 123] and Additional Costs Described in Motion for Attorneys' Fees [ECF No. 121]**

Plaintiff's Motion to Review Clerk's Action argues that she is entitled to costs in the amount of $3,263.50. At issue in this motion are Plaintiff's court reporter fees. Plaintiff requested court reporter fees for the depositions of Cassandra Fuller, Lorea Lewis, Kweilin Belitsos, Sharmeen Warren, Sheila Powell, Michael Mwathi, and Cassandra Fuller. In denying Plaintiff these costs, the Taxation Clerk stated:

> The court reporter fees as to the depositions of Cassandra Fuller ($809.00), Lorea Lewis ($598.50), Kweilin Belitsos ($616.00), Sharmeen Warren and

Sheila Powell ($822.50), and Michael Mwathi and Cassandra Fuller ($417.50) are not taxable, as the bill of costs fails to document how the corresponding depositions were used by the prevailing plaintiff. (See Bill of Costs Handbook, Section I(C), page 2, and Section II(C), page 3.).

[ECF No. 122, PageID.3818]. Costs were awarded for the court reporter fees for Michael Mwathi ($627.85), as the bill of costs documents that the corresponding transcript was used at trial for impeachment purposes. [Id]. The Bill of Costs Handbook specifically lists "Court reporter fees for attendance and travel for depositions," as a taxable cost, however, costs for transcripts are not taxable if used primarily for trial preparation or discovery. (Bill of Costs Handbook, Section II(C)(1)(f), page 3.). However, transcripts are not taxable if used primarily for trial preparation or discovery. (Id)

The Court agrees with the clerk, the receipts for court reporter fees are not itemized. The court reporter fees pertaining to all the depositions related to "One E-trans in PDF, full size, condensed, exhibits and attendance." See exhibits to [ECF No. 120]. It is impossible for the court to determine which portion of these fees were solely for court report attendance.

Plaintiff asks the Court to award these costs—which were found to be non-taxable by the clerk—to the additional costs requested in the Motion for Attorneys' fees. The Court will only award costs in court reporter fees ($598.50) for Lorea Lewis's deposition, since she testified at trial. Mr. Mwathi also testified at trial, but the court reporter fees associated with his deposition were already taxed by the

clerk. Plaintiff's Motion for Review of Clerks Action is **DENIED IN PART AND GRANTED IN PART**. Plaintiff is entitled to an additional $598.50 in costs.

Plaintiff's Motion for Attorneys' Fees argues that she is also entitled to additional costs totaling $3,357.14 submitted to the clerk and not taxed. Defendant's only response to this argument is stated below:

> In her bill of costs, plaintiff is seeking $74.4 dollars for electronic research. There is no description or breakdown of what this applies to. 2 hours on a motion to compel was sent the same day. This is likely basic office overhead that is not a cost that can be passed on to a non-prevailing party. *Pugach v M&T Mortg Corp*, 564 F Supp 2d 153, 165 (2008). However, without further evidence or a hearing a determination cannot be made. The expense should be struck as insufficiently documented or rolled into the evidentiary hearing on fees.

[ECF No. 121, PageID.3718]. Plaintiff does not respond to this specific argument. The Court agrees with Defendant, $74.4 must be deducted from the bill of costs associated with this motion. Plaintiff is awarded additional costs in the amount of $3,283. The court reporter fees for Lorea Lewis's deposition ($598.50) will be added to this for a total of $3,881.24 in costs awarded.

### V. Conclusion

The Court will **GRANT** Plaintiff's Motion for Attorneys' Fees **IN PART** and **DENY IT IN PART**. Mr. Flynn worked 293.3 hours on this case, but this number will be reduced to account for 30 hours in block billing, the final total for Mr. Flynn is 263.3 hours at $325 per hours. Ms. Frailey worked 317.4 hours at $242 per hour. Mr. Paree worked 18.4 hours at $200 per hour. And Ms. Champa

worked 113.3 hours at $275 per hour. **The total in attorneys' fees is $197, 220.80 and Plaintiff is awarded $3,881.24 in costs.**

## VI.    Amended Judgment

The judgment entered in this case on January 4, 2023, is **HEREBY AMENDED** to reflect the award of attorneys' fees and costs. Defendant must pay interest on the award for attorneys' fees and costs at a rate of 4.73% per day until the award is paid in full.

**IT IS SO ORDERED.**

Dated:  June 14, 2023            /s/ Gershwin A. Drain
                                          GERSHWIN A. DRAIN
                                          UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
June 14, 2023, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager