**EXHIBIT** R

21-014851-CB FILED  IN MY OFFICE    Cathy M. Garrett    WAYNE COUNTY CLERK    5/8/2023 7:55 PM    Matthew Johnson

**STATE OF MICHIGAN**

**IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE**

**DEVENKUMAR PATEL, an individual**
**AMEE PATEL, an individual, and**
**AMEE V. PATEL REVOCABLE TRUST,**             **Case No. 21-014851-CB**
**Dated 9/26/08**                                                    **Hon. Brian R. Sullivan**

       **Plaintiffs and Counter-Defendants,**

**v**

**DANIEL ABRAMSON, an individual,**

       **Defendant and Counter-Plaintiff.**

---

**ORDER GRANTING DEFENDANTS MOTION**
**FOR PARTIAL SUMMARY DISPOSITION**

**At a session of said Court, held in the City**
**County Building, City of Detroit, County of**
**Wayne, State of Michigan, on**
                **5/8/2023**

**PRESENT:   HONORABLE BRIAN R. SULLIVAN**

Defendant Daniel Abramson (Abramson) filed a motion for summary disposition of plaintiff's complaint on the basis the issues were previously litigated in Gratiot County Circuit Court. The Court grants defendant's motion for partial summary disposition on the basis there is no genuine issue of material fact the prior Gratiot County case disposed of the issue of the ownership and value of Patel's 49% interest in Ashley, only. Wallace LLC was not litigated. The Court concludes:

1. The issue of the cash value of the 49% membership interest of plaintiff Devenkumar Patel in Orchard Lake Investments Associates, LLC d/b/a Ashley Care Center was fully adjudicated in the Gratiot County Circuit Court and decided by the

1

November 4, 2019 Order. That issue cannot be re-litigated in this case for the reason that re-litigation of that issue is a collateral attack on the prior determination of the Gratiot County Circuit Court. Patel's remedy for any error in the determination of the merits of that issue was an appeal, not by a challenge asserted by a collateral attack in a new case in another circuit court.

2. Patel was required to terminate his membership interest in Ashley, not because of Abramson, but because the Office of the Inspector General (OIG), based on Patel's criminal conviction, pursuant to his June 24, 2008 Trading Partner Agreement and 42 USC 1320-a7.

3. Other remaining issues asserted in the Gratiot County case not adjudicated in the issue of Patel's membership interest and value, which the parties agreed to dismiss "without prejudice", are not precluded from being re-alleged on the basis of res judicata. The parties stipulated dismissal of the case "without prejudice" of the "remaining issues" in the case does not operate as an adjudication on the merits of those claims, so long as they are not related to, or a part of, the valuation of Patel's interest or involve Patel's membership interest in Ashley. The reason is that the designation of "without prejudice" specifically means disputes over those issues can be re-filed. The issue of Patel's membership interest and its value were completely litigated in the Gratiot County case and were done so for the reason it was on the verge of being lost.

Abramson asserts all the counts in the complaint are within the scope of the dismissed issue, the value of the 49% interest and Patel's membership interest. All the counts alleged in this case either were, or could have been, litigated in the Gratiot County case for the reason they are directly related to the value of the plaintiff's membership

2

interest. Those counts of the complaint cannot indirectly re-challenge the determination of the Gratiot County Circuit Court in this case as they were included in that decision. The Court agrees and dismisses the complaint based on res adjudicata and collateral estoppel as to Ashley only.

## STANDARD OF REVIEW

**MCR 2.116(C)(7).**

MCR 2.116(C)(7) provides:

Entry of judgment, dismissal of the action, or other relief is appropriate because the release, payment, *prior judgment*, immunity granted by law, statute of limitations, statute of frauds, an agreement to arbitrate or to litigate in a different form, infancy or other disability of the moving party, or assignment or other disposition of the claim before commencement of the action.

A motion pursuant to MCR 2.116(C)(7) may be supported by affidavits, depositions, admissions or other documentary evidence.  See also MCR 2.116(G)(3).  If such material is submitted to the court it must be considered by the court.  See MCR 2.116(G)(5); *Patterson v Kleinman*, 447 Mich 429, 432 (1994).

A motion under (C)(7) may be supported by affidavits, depositions, admissions or other evidence. *Maiden v Rozwood*, 461 Mich 109, 119 (1999); MCR 2.116(G)(5).  A party is not required to supplement the motion with these materials. The content of the pleadings (complaint) is accepted as true unless contradicted by the moving party. *Maiden, Id.*

**MCR 2.116(C)(8).**

A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint. All well-pleaded factual allegations are accepted as true and construed in a light most

favorable to the nonmoving party. *Wade v. Dep't of Corrections*, 439 Mich. 158,162, (1992).

A motion under MCR 2.116(C)(8) may be granted only where the claims alleged are "so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." Id. at 163. When deciding a motion brought under this section, a court considers only the pleadings. MCR 2.116(G)(5).

**MCR 2.116(C)(10)**

A motion under MCR 2.116(C)(10) tests the factual sufficiency of a complaint. *Maiden v Rozwood*, 461 Mich 109 (1999); *El-Khalil v Oakwood Healthcare, Inc.*, 504 Mich 152, 160 (2019). MCR 2.116(G)(4) requires:

> A motion under subrule (C) (10) must specifically identify the issues as to which the moving party believes there is no genuine issue as to any material fact. When a motion under subrule (C) (10) is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, judgment, if appropriate, shall be entered against him or her.

The trial court evaluates this motion for summary disposition by considering the affidavits, pleadings, depositions, admissions and other evidence submitted by the parties. *Maiden*; MCR 2.116(G)(5). See *Dextrom v Wexford Company*, 297 Mich App 406 (2010).

The evidence is taken in a light most favorable to the party opposing the motion. *Patrick v Turkelson*, 322 Mich App 595,605 (2018). The Court must consider the substantive evidence, and draw all reasonable inferences in a light most favorable to the non-moving party. *Maiden v Rozwood*, 461 Mich at 120; *Rice v Auto Insurance Association*, 252 Mich App 25 (2002); *Ward v Franks Nursery and Crafts, Inc.*, 186 Mich

4

App 120 (1990).

The motion under sub-rule (C) (10) must specifically identify the issues to which the moving party believes there is no genuine issue as to any material fact.  Once the moving party has met this burden, the burden then shifts to the nonmoving party to establish that a genuine issue of material fact exists.  *AFSCME v Detroit*, 267 Mich App 255, 261 (2005).  Additionally, if the moving party asserts that the non-movant lacks evidence to support an essential element of one of his or her claims, the burden shifts to the non-movant to present such evidence.  *Lowrey v LMPS & LMPJ, Inc.*, 500 Mich 1, 7 (2016).

The adverse party must respond and may not rest on mere allegations or denials in the pleadings. The adverse party must, by affidavit or otherwise, set forth specific facts showing there is a genuine issue of fact for trial.  See MCR 2.116(G)(4). A party's pledge to establish an issue of fact at trial cannot survive summary disposition under (C) (10). *Maiden*, 461 Mich at 121.  The court rule requires the adverse party to respond to the motion with specific facts to show there is a genuine issue of material fact for trial to meet its burden in the motion. The promise or representation of a party to establish an issue of fact *at trial* is also insufficient to prevent summary disposition under MCR 2.116(C)(10). The moving party has the initial burden to support its claim with documentary evidence.

The reviewing court must evaluate the motion by considering the substantively admissible evidence proffered in support and opposition of the motion. *Maiden*, 461 Mich at 121; *McCart v J Walter Thompson USA, Inc.*, 437 Mich 109, 115, note 4 (1991). The reviewing court should evaluate a motion for summary disposition under MCR 2.116(C) (10) and consider the substantively admissible evidence.  The court may not rely on the

5

possibility or promise the claim may be supported by evidence at trial. *1300 LaFayette East Coop, Inc. v Savoy*, 284 Mich App 522, 525 (2009).

A genuine issue of material fact exists when the record, giving the benefit of a reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds may disagree. *West, Id*.

Summary disposition under MCR 2.116(C) (10) is warranted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Johnson v Vanderkooi*, 502 Mich 751, 761 (2018); *Allison v AEW Capital Mgt., LLP*, 481 Mich 419, 425 (2008). "Circumstantial evidence can be sufficient to establish a genuine issue of material fact, but mere conjecture or speculation is insufficient." *McNeill-Marks v Midmichigan Med Ctr.-Gratiot*, 316 Mich App 1, 6 (2016).

If the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. MCR 2.116(C)(10), (G)(4). *Quinto v Cross & Peters Co.*, 451 Mich 358 (1996). See also *McCart v J. Walter Thompson USA, Inc.*, 437 Mich 109, 115 (1991); *SSC Associates Limited Partnership v General Retirement System of the City of Detroit*, 192 Mich App 360 (1991). Summary disposition is proper when the evidence shows there is no genuine issue of material fact, so the moving party is entitled to a judgment as a matter of law. See *West v General Motors Corp.*, 469 Mich 177 (2003).

## DISCUSSION

**1. Facts.**

1. Defendant Abramson was a Certified Public Accountant and manager of Wallace Street Partners, LLC and Orchard Lake Investments Associates, LLC d/b/a Ashley Care Center. These entities operated facilities which received Medicare benefits.

2. Wallace Street operated an adult foster care facility and rented space from Ashley. Wallace was not litigated in the Gratiot County case and to the extent there are claims remaining in the case pertaining to it they are not dismissed.

3. Plaintiff Devenkumar Patel (Patel) owned 49% interest in Ashley, a Medicare and Medicaid licensed skilled nursing facility located in Ashley, MI, Defendant Abramson owned 51%.

4. The sale to Patel happened on the same day Abramson made a purchase from others.

5. Plaintiff Patel was convicted of Health Care Fraud and Distribution of Controlled Substances on July18, 2016. This conviction was a violation of his June 28, 2008 agreement and he was ineligible to be owner of a facility which received Medicare benefits.

6. The OIG directed Patel to terminate his membership interest in the LLC. The LLC received Medicare and Medicaid payments.

7. Patel purported to assign his interest to the Amee V. Patel Revocable Trust.

8. The OIG rejected the transfer as Medicare benefits to Patel and so stated it in a May 29, 2018 letter to Patel, based on Patel's agreement with them. The Office of the Inspector General advised Patel claims that he could not transfer his ownership interest

to his wife. Patel claims Abramson failed to notify the State of the change of ownership.

The OIG gave a July 30, 2018 deadline for Ashley to act to terminate Patel's interest.

9. Abramson and the trust entered into an agreement with ACM Senior Living on August 17, 2018 to sell Ashley and Wallace Street, an adult foster care facility by January 31, 2019.

10. Amee Patel did not attend the closing. Neither did ACM attend the closing.

11. Patel sought to sell the two facilities to a New York purchaser.

12. On March 11, 2019 the OIG advised Ashley it was terminating its license based on Patel's ownership.

13. Abramson filed suit in Gratiot County to obtain relief to avoid closure of the facility and sought an injunction and other relief.

14. The Gratiot County Circuit Court entered a Permanent Injunction which ordered the sale of Patel's membership interest in the LLC, at fair market value, based on an appraisal in an order dated April 1, 2019. That order stated, "IT IS HEREBY FURTHER ORDERED Defendants (listed as Devenkumar Patel, Amee Patel and Amee V. Patel Trust, who are also the plaintiffs in this case) must immediately relinquish their interest in Plaintiff ORCHARD LAKE INVESTMENT ASSOCIATES, LLC a/k/a ASHLEY CARE CENTER ("ACC") by selling such interest to Plaintiff, Daniel Abramson (defendant in this case) for fair value which value shall be determined by an independent appraiser (Fair Value") appointed by the Court, whose appraisal shall be completed within thirty (30) days of the entry of this Order." See Order, April 1, 2019, Page 2.

15. The injunction was precipitated by the action taken by the OIG to sanction

8

Ashley for Patel's ownership interest which would have harmed the LLC.

16. Patel sought to dissolve the LLC in the Gratiot County Circuit Court and that motion was denied.

17. The Court ordered the parties to each nominate appraisers and each did. The two appraisers selected a third appraiser, who examined the LLC and rendered a report with a value of the entity, a fair appraisal of the fair market value of Ashley, without a discount for a member's minority ownership, control or marketability. See Order May 24, 2019 Page 2. Patel's value of 49% of the interest of Ashley was established to be $147,500.00. The appraised fair market value was paid into escrow with the Court.

18. Abramson's payment of the fair market value to the defendants' (who are the plaintiff's in this case) was for Patel's 49% membership interest. The consequence of the payment was that membership interest "shall be fully terminated and relinquished and Abramson shall be the sole and exclusive member of ACC." Order Page 2. Patel sold his membership interest by court order and it was redeemed or sold.

19. Patel (eventually) responded to the motion for injunctive relief, although did not appear for the hearing on April 1, 2019. Patel asserted he had claims and defenses to the value and itemized breach of fiduciary duty, membership oppression, accounting, fraud, civil conspiracy, tortious interference with a business, breach of contract and dissolution of Ashley and Wallace. He had the opportunity, and in fact participated in that court case in Gratiot County.

20. The Court ordered the sale of the interest of Patel to Abramson on November 14, 2019, some seven months after the case began. The case was closed and the remaining issues were "dismissed without prejudice" on stipulation of the parties.

21. Abramson sold Ashley to another buyer and paid the outstanding difference to Chase for its mortgage on Ashley with personal money and was released from his guarantee to Chase. Patel was also released. The amount of debt was about $2.6 million dollars.

22. There is no genuine issue of material fact that the OIG precipitated the sale of the Patel's interest was based on Patel's conviction which was a violation of its rules as to Medicare and Medicaid.

23. The sale of Patel's membership interest was required under 42 USC Sec 1320a-7 as Deven Patel was too closely associated with Medicaid dollars and had to be removed from ownership to avoid further and future sanctions. This removal was due to Patel's criminal conviction. The transfer of membership interest by Patel to his wife's trust was done in contemplation of his conviction, and against his June 24, 2008 Trading Partner Agreement, according to the OIG.

24. The OIG required a proper transfer of Patel's membership interest, and this excluded Patel's wife and her trust.

25. Patel's presence with his conviction would have otherwise resulted in the ultimate demise of the facility as those funds would have been not paid to Ashley. It was this hearing which Patel did not initially attend or respond, but did participate later in the court proceeding with a full opportunity to be heard.

26. In November 2021, Patel sued Abramson for:

    i)  Breach of the Operating Agreement;

    ii)  Breach of Fiduciary Duty;

    iii) Fraud/Fraudulent Concealment;

iv) Oppression;

v)  Conversion;

vi) Silent Fraud

vii) Unjust Enrichment and

viii) Exemplary Damages.

27. Abramson owned another business, Beaconshire, in Detroit, MI. Abramson sold it to Patel between 2007 – 2012. Beaconshire borrowed $3 million dollars secured by a mortgage on the property.

28. Abramson signed a Payment and Performance Guarantee which limited his guaranty to $400,000.00 and Patel singed a contribution agreement on October 13, 2009.

29. Abramson completed the sale to the Patels on January 20, 2012, when a second contribution agreement was signed by the Patels.

30. The contribution essentially stated that if Abramson was required to pay the Limited Guaranty, the Patels would contribute their proportionate share of the obligation in accordance with their membership interest, along with Pandya.

31. At that time Abramson owed no percent and Patel gave him an interest in the distributions from Ashley as security.

32. The lender filed suit in 2018 against Beaconshire claiming default on the mortgage and Abramson was sued on the guaranty for 2.5 million dollars. Abramson paid $300,000.00.

33. The Court approved the sum of $147,000.00 be moved from the escrow of the Gratiot County case, and allowed it to be applied to the debt on November 9, 2021. Abramson was to fund the balance of $152,500.00 by payment to the lender.

11

34. Abramson filed a counterclaim against Patels for contribution of that $152,500.00.

## 2. Discussion

The Patels advance a competing theory against Abramson, that the Gratiot Court granted only partial relief and did so without the presence of Patels in court; that there were oral representations of value of the LLC before the Patels purchased their interest; an appraisal was ordered; an appraiser was appointed; and the value is understated.

Patel further alleges the sale of Patel's interest was settled at $147,000.00 and the "parties negotiated a stipulated resolution to the case". (Response Brief P5).

Abramson asserts Patel has actually litigated, and had the opportunity to litigate, all the claims and issues asserted in the complaint in this Wayne County case in the Gratiot County case as to Ashley but not Wallace. Those issues are the value of Patel's 49% membership interest and the redemption of that interest as ordered by the Gratiot County Circuit Court as to Ashley and the remarks hereafter made refer only to Ashley and not to Wallace.

The court order states that value was for fair market value of Ashley.

The Court concludes these issues (to Ashley) were fully and completely litigated in Gratiot County. The remedy for any dissatisfaction or objections to that process or value and order of the Court was to file an appeal, not file a collateral attack in a complaint in this Court.

The final issue in the Gratiot County case was the fair market value of Patel's interest and the redemption of it by the remaining member. Upon redemption, Patel was no longer a member as he lost his membership interest. That loss of membership

precludes him from bringing suit against Abramson or Ashley for any breach of duty or violation as he is not a member of the LLC who can bring these claims. Any issues which arose before the redemption occurred were included in and merged in the order of sale of Patel's membership. That determination, if unacceptable to Patel, was subject to appeal but not subject to a collateral attack in new litigation.

The issues of ownership and operation of the Ashley facility which occurred before Abramson purchased Patel's membership interest in the LLC, articulated in Counts I through VIII of plaintiff's complaint, are dismissed based on res judicata and/or collateral estoppel. The Court grants defendant's motion on the basis that res judicata/collateral estoppel preclude the re-litigation of the value of Patel's membership interest, where the same (identical) parties litigated the same issue to a final conclusion. The Court adjudicated the issue of fair market value of Patel's membership interest which was extinguished by court order on the prompting of the OIG, and the value and redemption of Patel's membership interest was adjudicated in the Gratiot County Circuit Court with Patel's attendance, participation and input.

There is no genuine issue of material fact that the issue of the value of Patel's interest in Ashley was fully adjudicated in the Gratiot County case. The remaining issues in that case, dismissed without prejudice, does not operate as an adjudication on the merits and are not a final judgment for purposes of res judicata. See *Washington v Sinai Hosp*, 478 Mich 412, 418 (2007). But those issues, to the extent they exist have not been identified to the Court. In addition, the issues that were or could have been litigated in relation to value and membership interest and redemption or sale are barred under res adjudicate and collateral estoppel.

Res judicata bars a subsequent action, which plaintiff alleges is this case, because of a prior action which prior action must have been:

1. Decided on the merits;

2. With the same parties or their privies; and

3. The matter in the second action was, or could have been resolved in the prior action. *Washington*, 478 Mich at 418.

The allegations in this complaint satisfy all three elements. In this case, Patel's interest in Ashley was resolved, but apparently not all other remaining issues. The issue of value and membership status was resolved and reduced to a court order, a judgment on those issues, and the case was dismissed "without prejudice" as to the "remaining issues" and the case closed. By use of that language "without prejudice" means the ownership interest and fair market value was resolved. Since it was resolved it cannot be re-litigated.

**1. Res judicata applies to a final judgment, but does not apply where the prior dismissal was without prejudice as to the remaining issues of the case.**

Res judicata serves "an important function in resolving disputes by imposing finality to litigation where the same parties have previously had a full and fair opportunity to adjudicate their claims." *William Beaumont Hosp v Wass*, 315 Mich App 392, 398; (2016). Res judicata is also known as claim preclusion. *Bennett v Mackinac Bridge Auth*, 289 Mich App 616, 629 (2010).

Abramson alleges the first case was brought and litigated in Gratiot County Circuit Court. At that time, Ashley was under threat of termination of its license to operate or sanctions from the office of the OIG. See May 2018 letter to owners of Ashley. The Gratiot County Court gave the parties the opportunity to be heard, to file pleadings, to engage in

discovery and to explore the claims asserted in that case, the value and sale of Patel's interest. Other issues raised were undecided and preserved for further pursuit.

The Court and parties exhausted the issue of Patel's ownership of Ashley for the reason the OIG was forcing Patel to dispose of his interest. After the first direction to Patel from the OIG to dispose of his interest, he transferred it to his wife. The OIG noted that was a violation of 42 USC and his agreement of June 2008. It sent another warning he could not transfer his interest due to his criminal violation to his wife or her Trust. The OIG forecast further sanction if their directive was not followed. See letter of May 30, 2018 to Abramson and Patel as owners of Ashley. Abramson then moved for the sale of Patel's interest in Gratiot County Circuit Court.

The only issue completely resolved was the issue of the value of Patel's membership interest and his eligibility to retain his membership interest, which in fact he lost in Ashley due to his criminal conviction. That *issue* being fully resolved, which was a final order which closed the case as to that issue, is a final judgment for res judicata. The fact that other issues were dismissed without prejudice in the same case and in the same order does not impact the finality of the court decision as to the value and status of Patel as a member of the LLC.

In short, Patel cannot re-litigate those issues in this case. Res judicata is broader than collateral estoppel. Collateral estoppel applies to issues litigated, res judicata applies to claims. To the extent these issues of his membership status issues were fully and finally resolved the Court concludes they serve to estop Patel from bringing claims contrary to that determination in this case, which is a collateral attack. Patel's remedy was appeal, not re-litigation of the same issue.

The court in *Bryan* v *JP Morgan Chase Bank,* 304 Mich App 708, 715 (2014)

held:

> "The doctrine of res judicata is intended to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and encourage reliance on adjudication, that is, to foster the finality of litigation." *Bryan v JPMorgan Chase Bank*, 304 Mich App 708, 715 (2014).
> *Adair v Michigan*, 470 Mich 105, 121(2004) explained:
>
> The doctrine of res judicata is employed to prevent multiple suits litigating the same cause of action. The doctrine bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first. This Court has taken a broad approach to the doctrine of res judicata, holding that it bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not.

Res judicata requires that the prior action decided on the merits; the same parties or privies; and the matter in the second case was or could have brought in the first case. *Garret v Washington*, 314 Mich App 436,411(2016). Res judicata precludes re-litigation of those issues in this case.

The first two elements of res judicata are satisfied in this case, that is the prior case was between the same (identical) parties, Patel, his wife and her Trust and Abramson, but not the LLC. The subject matter of the second suit involved the Ashley facility, an LLC.

However, the primary issues in the prior case were resolved, it appears other issues may not have been fully or completely decided on the merits, as is evidenced and established by the written notation that the case was dismissed as to the remaining issues "without prejudice." Those issues were not specifically identified. Those two words dictate and decree that the rights and claims of that case are not final, nor fully litigated. See *McIntyre, infra*.

Claims were presented to that court, both in the pleadings and/or in oral argument,

16

in an effort to obtain relief in that case. The issues settled were the valuation attributable to Patel's 49% ownership interest by an independent appraiser who was to determine the fair market value of that interest and the sale of that interest. That court entered an order for the escrow, closed the case and dismissed the *remaining* claims "without prejudice" and those claims are still unidentified. See Order of Gratiot County Circuit Court, November 14, 2019.

The third factor, whether the matter in the second case could have been brought in the first case, is at issue. There is no question each Breach of Contract, Breach of Duty, Fraud, Oppression, etc. went to the heart of the claim for relief that Abramson sought against Patel. The whole case was precipitated by the OIG instructing Ashley of its decision as to Medicare and Medicaid funding for Ashley, that Patel had to alienate his interest or the facility would lose that funding. The issues alleged by Patel in this case were all filed and advanced in that litigation as it pertains to Patel's membership interest and ownership interest of the Ashley facility and its fair market value.

Defendant's motion for summary disposition is granted on the basis of res judicata. A decision is "final" when the appeals have been exhausted or the appeal time has passed. *Leahy v Orion Twp.*, 269 Mich App 527 (2006). In this case, there is no evidence the Gratiot Court order was appealed and the time to do so has passed.

**2. Collateral Estoppel**

The elements of collateral estoppel are:

1. The ultimate (identical) issue to be concluded in the second action is the same as involved in the first. See *Board of Cty Rd Comm'r v Schultz*, 205 Mich App 371, 376 (1994);

2. The issue in the first case was actually and necessarily litigated with a finding on which the judgment depended. Schultz, Id. "Actually litigated" means the issue was put into issue by the pleadings, submitted to a fact finder and determined where the parties had a full and fair opportunity to litigate the matter in the earlier proceeding. See *Bullock by Bullock v Huster*, 209 Mich App 551, 556 (1995), *vact'd & rem'd othr gds*, 451 Mich 8884 (1996).

Analogously, summary disposition is a determination on the merits for purposes of collateral estoppel, as is a declaratory judgment. In this case, Abramson moved for a permanent injunction and the redemption/sale of Patel's interest conveyed at fair market value after an independent appraisal by an arm's length selection process by both plaintiff Abramson and defendants Patel et al. It was accomplished after a court hearing in which both sides ultimately participated and filed pleadings.

The question for collateral estoppel is whether the issue of fact or law was actually litigated and actually determined by a valid and final judgment and the determination was essential to the final judgment. *Detroit v Qualls*,434 Mich 340 (1990); *Allen v McCurry*, 449 US 90, 94 (1980). The issue litigated in this case was the fair market value of Patel's membership and its sale/redemption.

In addition, the party seeking to prevent the litigation of the issue, which in this case is the defendant, must have been a party or privy to a party, in the prior action. In this case, the parties are identical. The mutuality of parties and issues means the defendant would have been bound by the Gratiot County Court decision had it been more favorable to Patel than Abramson, say for instance, it was a more lucrative than it was. *Lichon v American Universal Ins Co*, 435 Mich 408 (1990). Mutuality is not always

required, as when collateral estoppel is asserted defensively against a party who had had a full and fair opportunity to litigate the issue. *Monat v State Farm Ins Co.*, 469 Mich

679 (2004). The issue in this case was Patel's member value and the relinquishment of all of Patel's interest, both of which were done.

The specific claims filed by Abramson against Patel in Gratiot County were:

1. Breach of Fiduciary Duty;

2. Oppression under MCL 450.4515;

3. Waste of corporate assets; and

4. Injunctive relief for the forced sale of Patel's interest in Ashley based the OIG legal demand.

Issue Four was fully adjudicated in light of the declaration of the OIG against Patel, and indirectly, the owners of Ashley. All the counts really merged into issue Number Four, which are Patel's alleged Misconduct, Waste and Oppression had to merge and extinguish when he lost his membership interest. The specific issues dismissed without prejudice have otherwise not been specifically identified to the Court. However, apparently, something was reserved for future litigation. It cannot be the value or sale of the membership interest or the issues subsumed in it.

The Patels sued Abramson in this Wayne County case for:

1. Oppression;

2. Breach of Fiduciary Duty;

3. Breach of Duty in operation of Ashley (devalue of Ashley);

4. Mismanagement, causing devaluation of Ashley;

5. Fraud (in response to business valuation expert);

6. Breach of Contract; and

7. Violation of MCL 450.4515.

The balance of the issues beyond the valuation and ownership status of Patel were subsumed and extinguished by the sale (redemption) of Patel's by Abramson, which could have continued to be litigated in that case in Gratiot County but instead the parties opted to dismiss the claims, to the extent they existed, without prejudice. But the fact remains, the lack of a membership interest deprives Patel of his ability to bring a cause of action as a member. If there was a flaw in the valuation process, Patel could complain of that to the Court and appeal any unfavorable ruling at that time. Once Patel lost his membership interest, a process obtained by the Court based on his conviction and action by the OIG, Patel lost his right to complain about the management process, the Operating Agreement, of fiduciary duty of Abramson, mismanagement, fraud etc. for the reason these complaints can only be asserted by a member of an LLC. All these counts pertain to membership rights and Patel is not a member and not entitled to these rights. To any extent any such claim existed it must have been asserted prior to the sale or redemption of his interest. With his loss of membership interest, came the loss of his ability to seek redress of any violation of these rights as a member. The dismissal of the case without prejudice does not change that fact.

The Gratiot County case was dismissed "without prejudice" and is not an adjudication on the merits. See *Grimmer v Lee*, 310 Mich App 95, 102 (2015). An adjudication with prejudice is an adjudication on the merits and bars a further action on the same facts. *Grimmer*, 310 Mich App 102. A dismissal without prejudice is not intended to be "res adjudicata" on the merits. *Grimmer*, 310 Mich App at 102; See *McIntyre v McIntyre*, 205 Mich 496, 499 (1919). But that moniker went only to the "remaining issue"

20

not the issue of membership and value. All the counts in this case relate to value and membership, as a condition for filing the suit or as a basis of harm and that interest of Patel was extinguished by order of the Gratiot County Court.

In short, the law is clear that a dismissal accomplished "without prejudice" does not operate as an adjudication on the merits for the entire case and cannot be res adjudicata for the claims retained. The designation in the order of dismissal as "without prejudice" means the right or privilege to take further legal proceedings on the same subject is intact, and a dismissal of that designated kind and nature is not intended to be on the merits. *McIntyre*, 296 Mich at 499. It does not apply to those claims litigated or that could have been litigated and all the counts in plaintiff's complaint relate to value or membership, and that has been redeemed or sold. Patel has no interest to pursue in this case.

Collateral estoppel. Is a doctrine that is applied to strike a balance between a party's need to eliminate repetitious and needless litigation and the interest which affords litigants a full and fair adjudication of the issues involved in their claims.  See *Howell v. Vito's Trucking & Excavating Co*., 386 Mich. 37, 48 (1971); *Storey v Meijer*, *Inc.* 431 Mich 368, 372 (1988) held for collateral estoppel to apply, a question of fact essential to the judgment must have been *actually* litigated and determined by a valid and final judgment. The same parties must have had a full opportunity to litigate the issue, and there must be mutuality of estoppel.  See *Senior Accountants, Analysts & Appraisers Ass'n v. Detroit*, 399 Mich. 449, 458,(1976); *Howell v. Vito's Trucking & Excavating Co., 386 Mich. 37, 41–42 (1971). See also Monat v State Farm Insurance Company, 469 Mich 679,693 (2004).*

The doctrine of collateral estoppel is intended "'to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication....' " *Detroit v. Qualls*, 434 Mich. 340, 357 n. 30, (1990), quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980).

In this case, the issue decided by the Court was the "fair market value of Defendants' 49% membership interest in Plaintiff, Orchard Lake Investment Associates, LLC a/k/a Ashley Care Center…" See Gratiot County Order November 4, 2019. Plaintiffs had a full and fair opportunity to litigate the issue of the value of his interest of the LLC in the prior case. The question is how far does that determination extend as to the other counts in this case.

There clearly is a complete resolution of the value of defendant's interest. That issue was decided with finality and is not subject to re-litigation.

Patel's value of the Ashley facility was determined, but not the other claims as the order states "IT IS FURTHER ORDERED that *all remaining claims of the respective parties' subject to this litigation are hereby dismissed without prejudice* and without costs to either party." See Stipulated Order of Escrow and Dismissal, November 4, 2019. The order is clear that the Patel's value of Ashley was determined and the remaining issues raised in the case were preserved and not litigated.

Count I. MCL 450.4515 states:

Sec. 515. (1) *A member* of a limited liability company may bring an action in the circuit court of the county in which the limited liability company's principal place of business or registered office is located to establish that acts of the managers or members in control of the limited liability company are illegal or fraudulent or constitute willfully unfair and oppressive conduct toward the limited liability company or the member. *If the member* establishes grounds for relief, the circuit court may issue an order or grant relief as it considers appropriate, including, but not limited to, an order providing for any of the following:

22

(a) The dissolution and liquidation of the assets and business of the limited liability company.
(b) The cancellation or alteration of a provision in the articles of organization or in an operating agreement.
(c) The direction, alteration, or prohibition of an act of the limited liability company or its members or managers.
(d) The purchase at fair value of the member's interest in the limited liability company, either by the company or by any members responsible for the wrongful acts.
(e) An award of damages to the limited liability company or to the member. An action seeking an award of damages must be commenced within 3 years after the cause of action under this section has accrued or within 2 years after the member discovers or reasonably should have discovered the cause of action under this section, whichever occurs first.

(2) As used in this section, "willfully unfair and oppressive conduct" means a continuing course of conduct or a significant action or series of actions that substantially interferes with the interests of the member as a member. Willfully unfair and oppressive conduct may include the termination of employment or limitations on employment benefits to the extent that the actions interfere with distributions or other member interests disproportionately as to the affected member. The term does not include conduct or actions that are permitted by the articles of organization, an operating agreement, another agreement to which the member is a party, or a consistently applied written company policy or procedure.

Counts I Member Oppression, Count II Breach of Fiduciary Duty; Count III Breach of Duty in operation of Ashley; Count IV Mismanagement of the LLC; Count V Fraud on behalf of defendant in the operation of the LLC; Count VI Breach of Contract, the Operating Agreement and Count VII Breach of MCL 450.4515 all require plaintiff to be a member of the LLC. The damages relate to Patel's value. These interests and claims have already been determined by the Court as stated, to Ashley only.

Plaintiff's complaint is based on violation of MCL 450.4515 and that statute clearly applies only to a member of an LLC by the plain language of the statute.

The Patels have sold their membership interest to defendant and have no interest remaining in the LLC, even though the sale was not their choice but was accomplished by order of the court pursuant to the OIG's direction. Since none of the plaintiffs are

members of the current LLC, none of the plaintiffs can bring a cause of action for an action reserved by statute to be for members for improper conduct of mangers or members in control. MCL 450.4515.

Count III alleges the defendants failed to provide the proper information to the appraiser in the prior suit. The remedy for that act was to appeal that court order. Plaintiffs cannot collaterally attack that decision in a new suit.

Count IV alleges that Ashley property should have been partitioned before the appraisal was made by the Gratiot Circuit Court. That act was capable of appeal and can only be brought by a member. The Patel's are not members of the LLC. Any issue pertaining to the court order should have been advanced on appeal of the Gratiot County Court.

Count V alleges conversion. The Patels are not members of the LLC. The Court determined fair market value for their interest in a process of appraisal that the Patels participated in at that time. Any claim they have for a wrong based on their membership status should have been made at the time of the sale of their interest. They no longer have any interest to protect, although they had the opportunity to do so at the time, they did not avail themselves of it. That issue was a matter for appeal, not by way of collateral attack on the order of that Court in this case in this Court.

Defendant's motion for summary disposition based on res judicata and collateral estoppel is granted as to plaintiff's complaint.

### 3. Contribution Agreement.

The next motion is defendant's motion for summary disposition based on a contribution agreement on a revolving mortgage with Abramson and Patel. The right states in Paragraph 1:

To the extent that Abramson is legally required to pay any amount in

connection with the Limited Guaranty …in excess of his respective proportion share…then he shall have a right of contribution against Patel and Pandya for their proportionate share … of such obligation …so that any sum paid under the Limited Guaranty shall be borne by Abramson, Patel and Pandya in proportion to their respective membership interests in Breconshire. Contribution Agreement, Page 1 Paragraph 1.

The second Contribution Agreement has identical language as does the agreement of October 13, 2009 (signed by Abramson and Amee Patel) but the second Contribution Agreement was entered into on January 20, 2012 between Abramson and Deven Patel, only, for Beaconshire, and Paragraph1 Page 1 and 2 reflect it is signed by Deven. However, the second agreement specifically references Amee, bears a proportionate obligation to pay any sum. See Paragraph 1, Page 2, Contribution Agreement of January 20, 2012.

Abramson alleges his proportionate amount is zero as he had no interest in the entity owned completely by the Patels. Abramson paid $300,000.00 to satisfy the debt; he subtracted $147,000.00 in escrow the balance owed to him is $152,500.00. The Court agrees and grants summary disposition.

## CONTRACT LAW

A contract is an agreement between parties which derives its binding force from the meeting of the minds of the parties. *In Re Madigan Estate*, 312 Mich App 553, 562 (2015); *Sherbow*, 326 Mich App at 695. Parties are free to contract and courts enforce the contracts unless they are in violation of a law or public policy. *Edmore Village v Crystal Automation Systems, Inc.*, 322 Mich App 244, 264 (2017); *Sherbow*, at 695. That is, private contracts and covenants are to be enforced unless there is a specific basis for finding them unlawful. *Sherbow*, 326 Mich App at 696; *Terrian v Zwit*, 467 Mich 56, 70 (2002).

A trial court's determination of an existence of a contract is a question of law.  See *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 452 (20006); *Sherbow*, 326 Mich App at 695.

Defendant claims there is no contract with plaintiff. Plaintiff has not alleged the existence of any written contract between he and defendants, nor was one attached to the original or amended complaint, for the reason no one contends there is one.

The interpretation of a contract has the goal to give effect to the party's intent at the time they entered into the contract.  *Miller/Davis v Ahrens Constr, Inc.* 495 Mich 161, 174 (2014).  The party's intent is determined by interpreting language of the contract according to its plain and ordinary meaning.  *Ahrens, supra*.  If the language is unambiguous the contract must be enforced as written.  *In Re:  Smith Trust*, 480 Mich 19, 24 (2008).

The elements of a contract are: 1) parties competent to enter into the contract; 2) proper subject matter; 3) legal consideration; 4) mutuality of agreement and mutuality of obligation.  *Thomas v Leja*, 187 Mich App 418 (1991).

Plaintiff must allege and ultimately demonstrate there is a contract between he and defendants, oral or by course of conduct, and defendants' breached that agreement with plaintiff, and plaintiff suffered damages as a result of that breach. See *Miller Davis v Ahrens Construction Inc.*, 495 Mich 161 (2014).

Construction of a contract is a question of law for the Court.  See *Meagher v Wayne State University*, 222 Mich App 700 (1997); *Henderson v State Farm Fire and Casualty Company*, 460 Mich 348, 353 (1999). The question in this case is whether the undisputed transfer of money to defendants was a contract, a loan, or an investment.

A court is not permitted to make its own determination of reasonableness and to rewrite a contract accordingly when a contract is unambiguous, because that "is contrary to the bedrock principle of American contract law that parties are free to contract as they see fit, and the courts are to enforce the agreement as written absent some highly unusual circumstance, such as a contract in violation of law or public policy." *Kendzierski*, 503 Mich. at 312

A Contribution Agreement is a contract. Abramson and Amee Patel signed the first Contribution Agreement and Abramson and Deven signed the second Contribution Agreement, but Amee is referenced in that contract.

There is no genuine issue of material fact that Abramson paid the $300,00.00, with a credit for the escrow amount of $147,000.00 the balance is $152,500.00. There is no genuine issue of material fact that two Contribution Agreements were entered into; Abramson provide evidence of payment. The burden shifts to Patels to submit evidence which rebuts that presented by Abramson. Instead, Patels make an argument that they have affirmative defenses, which is not adequate to meet their burden under the court rule as stated above.

By agreeing to make contribution in a written contract, the Patels, Amee and Deven, are obligated to pay their proportionate share of the debt paid by Abramson in their respective proportionate amounts. Abramson has presented evidence of that payment and has provided the contracts. Patels must do more than state a general denial of that claim. Abramson's motion for summary disposition on its counterclaim is granted, for the reason that the repayment was stated in the Contribution agreement signed by Amee and Deven Patel, and

IT IS SO ORDERED.

/s/ Brian R. Sullivan   5/8/2023
Brian R. Sullivan, Circuit Judge

ISSUED:

The movant shall submit an order by stipulation or under the seven-day rule in accordance with the Court's rulings of this Opinion and Order. The order must state, immediately preceding the judge's signature, whether it resolves the last pending claim and closes the case pursuant to MCR 2.602.