UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ZELMA MOTLEY

Plaintiff

v.

METRO MAN I, D/B/A
WESTWOOD NURSING CENTER


Defendant.

_____/

Case No. 20-cv-11313

U.S. DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

HON. CURTIS IVY, JR.
UNITED STATES MAGISTRATE JUDGE

**AMENDED OPINION AND ORDER[1]: (1) GRANTING IN PART AND
DENYING IN PART PLAINTIFF'S MOTION FOR ENTRY OF ORDER
FOR DEFENDANT TO APPEAR AND SHOW CAUSE AS TO WHY
DEFENDANT SHOULD NOT BE HELD IN CONTEMPT [ECF NO. 144];
(2) DENYING PLAINTIFF'S MOTION TO STRIKE;
(3) GRANTING PLAINTIFF'S EMERGENCY MOTION FOR ORDER
PREVENTING THE TRANSFER OF ANY PROPERTY OF THE
DEFENDANT AND APPOINTMENT OF RECIEVERSHIP [148];
AND**

---

[1] The Opinions and Orders entered at ECF Nos. 164 and 165 are identical. The same Opinion and Order was entered twice, at ECF Nos. 164 and 165, due to a filing error. Those Opinions and Orders are hereby amended only to correct typographical errors and for purposes of added readability. Also, the amendment adds a citation to *Patel v. FisherBroyles, LLP*, No. 357092, 2022 WL 17170377, at *1, n.1, (Mich. Ct. App. Nov. 22, 2022) under Section III.C.1, entitled "Discussion." All substantive rulings, holdings, discussion, and terms remain unchanged. This Amended Opinion and Order supersedes the Opinions and Orders entered at ECF Nos. 164 and 165. However, the operative dates and deadlines, as stated in ECF Nos. 164 and 165, and restated in this Amended Opinion and Order, remain in effect.

## (4) DENYING DEFENDANT'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEFING [ECF NO. 162]

## I. INTRODUCTION

On May 26, 2020, Plaintiff Zelma Motley ("Plaintiff' or "Motley") filed a complaint alleging claims under the Americans with Disabilities Act ("ADA") (Count I), the Michigan Persons With Disabilities Civil Rights Act ("PWDCRA") (Count II), and the Michigan Elliott-Larsen Civil Rights Act ("ELCRA") (Count III). [ECF No. 1]. Those claims proceeded to trial. On December 15, 2022, the jury returned a verdict in favor of Plaintiff in the amount of $265,000.00. Judgment was entered on January 4, 2023. On June 14, 2023, the Court amended that judgment to award Plaintiff $197,220.80 in attorneys' fees, $3,881.24 in costs, and interest on those fees and costs as well. ECF No. 135, Page.ID 4303.

Before the Court are four motions related to Plaintiff's collection attempts against Defendant ("Defendant" or "Metro Man"). First, Plaintiff filed a Motion for Entry of Order for Defendant to Appear and to Show Cause as to Why Defendant Should Not Be Held In Contempt (the "Show Cause Motion"). ECF No. 144. It was filed on August 30, 2023. Defendant responded on September 26, 2023. ECF No. 146. In lieu of a reply, Plaintiff filed the second motion at issue in this Opinion and Order: Plaintiff's Ex-parte Motion to Strike Defendant's Response (the "Ex Parte Motion"). ECF No. 146. No response to the Ex Parte Motion was filed.

-2-

Third, Plaintiff filed an Emergency Motion for Order Preventing the Transfer of Any Property of Defendant and Appointment of Receivership on October 3, 2023 (the "Emergency Motion"). ECF No. 148. Defendant responded on October 12, 2023, and Plaintiff replied on October 13, 2023. On October 30, 2023, the Court held oral argument pertaining to the Show Cause Motion, the Ex-Parte Motion, and the Emergency Motion.

Fourth, On November 1, 2023, Defendant filed an Emergency Motion for Leave to File Supplemental Brief Regarding the Detrimental Business Impacts of the Appointment of Receiver (Defendant's "Motion for Leave") [ECF No. 162]. Plaintiff responded on November 3, 2023. Upon review of the briefing, the Court concludes that oral argument will not aid in the resolution of this matter. Accordingly, the Court will decide this motion on the briefs. *See* E.D. Mich. L.R. 7.1(f)(2).

For the reasons set forth below, Plaintiff's Show Cause Motion is **GRANTED IN PART AND DENIED IN PART**. It is granted with respect to Plaintiff's request to compel discovery; Defendant must produce all documents requested in the subpoena and designate a witness who shall appear to be deposed no later than **thirty (30) days** from the date of this Opinion and Order. Defendant **SHALL** produce the documents subject to subpoena and identify the individual with the most knowledge of Metro Man's financial condition no later than

-3-

**November 14, 2023**. No later than **forty-five (45) days** after entry of this order, Defendant must show cause in writing why it should not be held in contempt for post-judgment discovery violations.

The portion of Plaintiff's Show Cause Motion that requests injunctive relief, is **DENIED.** Plaintiff's Ex Parte Motion is **DENIED**. Plaintiff's Emergency Motion is **GRANTED.** Defendant's Motion for Leave is **DENIED**.

## II. Factual Background

Now that trial has concluded and Judgment has been entered, Plaintiff has unsuccessfully attempted several times to collect on her judgment. Plaintiff's Motions raise grave concerns pertaining to Metro Man's unwillingness to cooperate and its alleged efforts to delay justice. Though the Motions presently before the Court pertain to Defendant's post-judgment efforts to avoid collection, Metro Man's delay tactics began well before trial occurred.

Indeed, Metro Man has been sanctioned three times; twice for discovery violations and once for refusal to send a person with full settlement authority to the final pretrial conference. *See* ECF Nos. 71, 89, and 107. There have been seven law firms who filed respective appearances in this case on behalf of Metro Man. Five of them withdrew from the case. These appearances and withdrawals occurred in successive order with most of them citing a breakdown in attorney-client relations. One firm entered an appearance, withdrew that appearance, then another

firm appeared, later withdrew that appearance, and so on. *See* ECF Nos. 11, 37, 74, 92, and 133.

Plaintiff's brief alleges that Defendant "utterly ignored every single attempt by Plaintiff to discuss or arrange payment of the Judgment." ECF No. 148, PageID.4564. On July 5, 2023, Plaintiff's counsel emailed defense counsel, Mr. Xuereb, to inform him that she planned to subpoena Metro Man to appear for a debtor's examination and to produce documents relating to its finances. ECF No. 144-3, PageID.4340. Additionally, Plaintiff's counsel asked Mr. Xuereb and Metro Man for their availability and whether Mr. Xureb would accept service on behalf of his client. Mr. Xuereb responded, "[w]e will no longer be representing Mr. Patel in this matter. Thank you." *Id*. Mr. Xuereb did not file a notice of withdrawal in this Court. Two days later, Attorney Mark Bendure filed a notice of appeal on Metro Man's behalf. Plaintiff's counsel asked Mr. Bendure whether he would accept service of the subpoena, he responded, "I expect to be involved in only the appeal, not any debtor creditor/collection issues, so I am not able to accept service." ECF No. 144-5, PageID.4353.

On July 10, 2023, Plaintiff served a subpoena *duces tecum* on Defendant via certified mail directed to the attention of the Defendant's resident business agent, sole shareholder, and operator Amee Patel. ECF No. 144-6. It commanded the appearance of a "corporate representative or person with knowledge of

Defendant's financial condition, including but not limited to accounts receivable, profit and loss statements, and assets" to testify regarding its finances. ECF No. 144-6. The date specified on the subpoena for appearance was August 3, 2023. Further, the subpoena sought the production of financial documents including, *inter alia*, records relating to Defendant's interests in real property, bank/credit union/investment accounts, and other tangible and/or personal property dating from January 1, 2017, to the date the subpoena was served. ECF No. 144-6, PageID.4360. Plaintiff says it received no response or objection to the subpoena.

Plaintiff asserts the parties conducted the sixth mediation in this matter pertaining to Defendant's appeal, currently pending before the Sixth Circuit. It occurred on August 3, 2023. Deven Patel ("D. Patel") attended the mediation as Defendant's client representative, along with Mr. Bendure. According to Plaintiff, this mediation yielded no fruitful discussion, with Defendant claiming that it was insolvent. Plaintiff's counsel then inquired about the subpoena and whether Deven Patel would sit for the examination. Mr. Bendure indicated that D. Patel was unavailable for the deposition on August 4, 2023, but promised that Metro Man would begin producing documents by the end of that week. The parties agreed to an August 11, 2023, deadline for the "first priority" documents. Plaintiff maintains that only after following up with Mr. Bendure yet again on August 25, 2023 did "Defendant produce[] excerpts from their tax returns for the years 2021 and 2022,

as well as a document purported to be Defendant's profit/loss statement for part of 2023." ECF No. 144, PageID.4324. Plaintiff alleges that the tax returns produced were incomplete, unsigned, and they did not include any attachments filed with the returns.

Among the documents provided was also a February 2023 complaint filed by C. Patel in Wayne County Circuit Court, Case No. 23-002822-CB ("2023 Complaint"). ECF No. 149. The 2023 complaint seeks judicial foreclosure and other relief based on a 2018 default judgment of roughly $1.88 million entered in favor of C. Patel against a host of defendants, including Metro Man, Amee Patel, Deven Patel, and several business entities owned by one or more of the Patels. ECF No. 159-2, PageID.5010. The 2023 Complaint names as defendants only Metro Man I and Legacy Plus Holdings, LLC ("LPH"), despite there being a long list of defendants, not including LPH, named in the underlying action. It was filed a month after judgment was entered in this case and seeks to enforce the five-year-old 2018 default judgment against Metro Man and LPH. The 2023 Complaint urges the state court to authorize foreclosure on, *inter alia*, Metro Man's and LPH's personal and real property.

Both Metro Man and LPH are owned and operated by Amee Patel. ECF No. 144-15, PageID.4411.[2] LPH owns real property at 16588 Schaefer, Detroit (the "Schaefer Property"), where Metro Man operates and allegedly pays $400,000 annually in rental fees. ECF No. 148, PageID.4575. Furthermore, ownership of the Schaefer Property was transferred to Legacy Plus Holdings in 2015 by way of a Quit Claim Deed from a company named "Legacy Two Holdings, LLC," which is wholly owned by Deven Patel, in consideration of ten dollars. ECF No. 144-14, PageID.4408. Amee Patel has forty-three companies registered to her name in the State of Michigan, some of which are being targeted for federal investigation. ECF No. 144, PageID.4329; ECF No. 144-13; ECF No. 144-17. Her husband, Deven Patel, was listed as Defendant's President until 2016 and has twenty-two companies affiliated with his name. ECF No. 144-18.

Based on the 2023 Complaint and additional circumstances detailed below, Plaintiff alleges a scheme, facilitated by Amee and Deven Patel ("A. Patel" and "D. Patel")—a husband and wife involved in the ownership and operation of Metro

---

[2] The Court notes that Plaintiff alleges, "C. Patel is Deven Patel's father who resides in Canada. [ECF 149-1] Deven Patel ('D. Patel') is Defendant's owner and operator in all-but-name. While paperwork with the State of Michigan indicates that D. Patel's wife, Amee Patel ('A. Patel'), is Defendant's sole owner and operator, that was the result of D. Patel being convicted of Medicare fraud. [Id.] Still to this day, D. Patel acts as the owner, even appearing for a settlement conference on the first day of trial in this matter and, most recently, as Defendant's representative at a mediation conducted as part of Defendant's appeal." ECF No. 160, PageID.5018.

Man—to hide Defendant's assets and "frustrate collection of Plaintiff's Judgment." ECF No. 148, PageID.4566. Plaintiff also asserts that C. Patel—D. Patel's father and the proponent of a Motion to Intervene [ECF No. 159]—is involved in the scheme. *Id*. As evidence of these claims, Plaintiff relies on the events referenced *supra* and several previous tangential cases involving the Patel family, their numerous business entities, and accusations leveled against them involving fraudulent transfers, *inter alia*. The Court will discuss these tangential matters in conjunction with its analysis pertaining to Plaintiff's Emergency Motion.

## III.  Discussion

Plaintiff's Show Cause motion seeks, *inter alia*, that the Court compel the production of documents pertaining to Defendant's financial condition beginning in January 2017 and that it compel Defendant to appear for a debtor's examination. Plaintiff's Ex Parte Motion urges the Court to strike Defendant's response to the Show Cause Motion. Plaintiff's Emergency Motion requests that a receiver be appointed. And Defendant's Motion for leave asks the Court for time to file supplemental briefing pertaining to the Emergency Motion. The Court will discuss the merits of all motions in sequential order. For the sake of clarity, however, the Court will discuss Plaintiff's Ex Parte Motion first.

### A. ECF No. 146: Plaintiff's Ex Parte Motion to Strike Defendants Response

As stated *supra*, although Mr. Bendure purports to represent Metro Man solely as appellate counsel, he filed a response to Plaintiff's Show Cause Motion on behalf of Metro Man. Plaintiff moves to strike Defendant's response, arguing that Mr. Bendure "cannot decide to participate in this Case only to the extent that it is convenient for his client. He either represents them in this matter or he does not, and he has made it clear that he does not." ECF No. 147, PageID.4559.

Notwithstanding the oral and written representations Mr. Bendure made to Plaintiff's counsel regarding the scope of his representation of Metro Man as appellate counsel, at the time Mr. Bendure filed Defendant's response to Plaintiff's Show Cause Motion, Mr. Bendure appeared as Defense Counsel in this Court's proceedings. See E.D. Mich. L.R. 83.25(a) ("An attorney appears and becomes an attorney of record by filing a pleading or other paper or a notice of appearance.").

It is true that the response indicated that Mr. Bendure was retained only to represent Defendant on appeal and that he "served as an intermediary for production of financial information" in order to "protect defendant's interests." ECF No. 146, PageID.4551. But attorneys seeking to appear for purposes of providing limited legal representation must comply with LR 83.25(c). That rule requires, *inter alia*, that an attorney appearing for purposes of limited representation obtain leave of court and "the attorney must e-file a notice of limited

appearance before appearing in any capacity." *Id*. Mr. Bendure's purported limited appearance did not comply with the local rules.

Mr. Bendure did not file a motion for leave of court to provide limited representation or file a notice of limited representation. Effectively he appeared as counsel of record, as stated in local rule 82.25(a) and his appearance was not limited as described in local rule 83.25(c). To date, he has not filed a notice of withdraw from the case or a notice of limited representation, and the Court has not terminated Mr. Bendure's representation of Metro Man in this matter. Further, Defendant has obtained new counsel, and Metro Man's new lawyer has not attempted to amend Metro Man's response. Accordingly, the Court will not strike Defendant's response and Plaintiff's Ex-Parte Motion is **DENIED**.

### B. ECF No. 144: Plaintiff's Show Cause Motion

Plaintiff's Show Cause Motion urges the Court to enter an order requiring Defendant to appear in person to show cause why it should not be held in contempt. She also requests that the Court: (1) compel Defendant to produce the documents that were subject to subpoena, (2) provide a date for Defendant to produce the 30(b)(6) witnesses requested, and (3) provide additional relief if Defendant fails to comply. ECF No. 144, PageID.4328. Plaintiff also requests injunctive relief "to prevent the transfer of any property, money, or things in this action, or the payment or delivery thereof to the judgment debtor." *Id*.

With regard to the motion to compel, Defendant asserts that the parties agreed on the production of certain "first priority" documents, which Defendant purports to have already produced. Metro Man says it has acted in "good faith" to provide Plaintiff with the information she is entitled to as a judgment creditor and that, "Defendant remains open to looking for and providing additional information to allow Plaintiff to verify [its] financial condition." ECF No. 146, PageID.4552. The subpoena requested records relating to Defendant's interests in real property, bank/credit union/investment accounts, and other tangible and/or personal property dating from January 1, 2017, to the date the subpoena was served. According to Plaintiff, "Defendant produced excerpts from their tax returns for the years 2021 and 2022 as well as a document purported to be Defendant's profit/loss statement for part of 2023." ECF No. 144-6, PageID.4360. In the absence of objection to the subpoena, or at minimum, an explanation for why it did not produce the documents requested, it strains credulity for Metro Man to assert that it acted "in good faith" to comply with the subpoena.

Defendant's response also notes that the documents produced show that Metro Man is deeply in debt, suffering from severe negative cash flow, and "Defendant does not have liquid assets to secure an appeal bond." *Id*. Metro Man nonetheless requests that the Court stay collection proceedings pending decision on appeal pursuant to Fed. R. Civ. P. 62 (h). *Id.* That rule provides that the "court may

-12-

stay the enforcement of a final judgment entered under Rule 54(b) until it enters a later judgment or judgments and may prescribe terms necessary to secure the benefit of the stayed judgment for the party in whose favor it was entered." Fed. R. Civ. P. 62 (h). Given that Defendant cannot post an appeal bond, the Court will not stay proceedings under Rule 62 (h).

Under Fed. R. Civ. P. 69(a)(2), to aid of the judgment or execution, "the judgment creditor . . . may obtain discovery from any person[—including the judgment debtor—]as provided in these rules or by the procedure of the state where the court is located." Under MCL §600.6110, the judge may issue a subpoena "requiring [that] the judgment debtor . . . appear at a specified time and place, and be examined on oath, and to produce for examination any books, papers, or records in his or its possession or control which have or may contain information concerning the property or income of the debtor."

Plaintiff has obtained a subpoena requiring Defendant, the judgment debtor, to appear for a deposition and produce documents. In the absence of objection or a protective order, Defendant must deliver on its promise to "look[] for and provid[e] additional information to allow Plaintiff to verify [its] financial condition." ECF No. 146, PageID.4552. Further, Defendant must comply with the subpoena and produce any documents that have been requested but have not been turned over to Plaintiff. Defendant must also designate a Rule 30(b)(6) witness.

Plaintiff's Motion is **GRANTED** with respect to the portion that seeks an order compelling Defendant to produce documents subject to subpoena and to produce a Rule 30 (b)(6) witness. That witness must appear for a creditor's examination.

Finally, Plaintiff requests injunctive relief but cites no authority and provides no analysis pertaining to why injunctive relief would be proper under the applicable authority, including the Federal Rules of Civil Procedure. Accordingly, Plaintiff's request for injunctive relief is **DENIED WITHOUT PREJUDICE**.

### C. ECF No. 148: Plaintiff's Emergency Motion

Plaintiff's Emergency Motion urges that the Court to enter an Order prohibiting the transfer of Metro Man's assets. She also contends a receiver must be appointed. Plaintiff suggests that Amee and Deven Patel will cause Metro Man to improperly transfer its assets to C. Patel, rendering Plaintiff unable to collect on her judgment against Defendant. The Court will discuss the legal standard, the parties' arguments, and the applicable analysis below.

Fed. R. Civ. P. 66 states that "[t]hese rules govern an action in which the appointment of a receiver is sought, or a receiver sues or is sued. But the practice in administering an estate by a receiver or a similar court-appointed officer must accord with the historical practice in federal courts or with a local rule." Fed. R. Civ. P. 69 (a)(1) provides that "the procedure on execution [of a money judgment]

. . . must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." *Id*.

Under Michigan law, courts have "broad jurisdiction to appoint a receiver in an appropriate case." *PNC Bank, Nat'l Ass'n v. Legal Advoc., P.C*., 626 F. Supp. 3d 972, 975 (E.D. Mich. 2022) (citing *Reed v. Reed*, 265 Mich.App. 693 N.W.2d 825, 844 (2005) (internal citations omitted). "The purpose of appointing a receiver is to preserve property and to dispose of it under the order of the court." *Reed*, 693 N.W.2d at 844 (citing *Cohen v. Cohen*, 125 Mich.App. 206, 335 N.W.2d 661 (1983)). A receiver may also be appointed "to protect a judgment creditor's interest in a debtor's property when the debtor has shown an intention to frustrate attempts to collect the judgment." *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc*., 999 F.2d 314, 317 (8th Cir. 1993) (citing *Leone Indus. v. Associated Packaging, Inc*., 795 F.Supp. 117, 120 (D.N.J.1992).

Michigan law grants a court broad authority to issue orders necessary for the enforcement of its judgments. After a monetary judgment has been rendered in any court of this state, the judge may, on motion in that action or in a subsequent proceeding:

(1) Compel a discovery of any property or things in action belonging to a judgment debtor, and of any property, money, or things in action due to him, or held in trust for him;

(2) Prevent the transfer of any property, money, or things in action, or the payment or delivery thereof to the judgment debtor;

-15-

(3) Order the satisfaction of the judgment out of property, money, or other things in action, liquidated or unliquidated, not exempt from execution;

(4) Appoint a receiver of any property the judgment debtor has or may thereafter acquire; and

(5) Make any order as within his discretion seems appropriate in regard to carrying out the full intent and purpose of these provisions to subject any nonexempt assets of any judgment debtor to the satisfaction of any judgment against the judgment debtor.

M.C.L § 600.6104 (emphasis added). The statute also provides that "[i]t is not necessary that execution be returned unsatisfied before proceedings under this chapter are commenced." *Id*.

Importantly, however, the Michigan Court of Appeals has held that "a receiver should only be appointed in extreme cases." *Reed v. Reed*, 265 Mich.App. 693 N.W.2d 825, 844 (2005) (citing *Petitpren v. Taylor Sch. Dist.*, 104 Mich.App. 283, 304 N.W.2d 553, 558 (1981)). Michigan courts designate "the appointment of a receiver [a]s a remedy of last resort and [it] should not be used when another, less dramatic remedy exists." *Woodward v. Schwartz*, 2020 WL 1228657, at *2 (Mich. Ct. App. Mar. 12, 2020) (internal citation omitted). In cases where a money judgment has entered, the court has the statutory authority to appoint a receiver of any property the judgment debtor has or may thereafter acquire, and the Court has "the equitable authority to make such an appointment when other approaches have failed to bring about compliance with the court's orders." *Arbor Farms, LLC v.*

-16-

*GeoStar Corp.*, 305 Mich. App. 374, 853 N.W.2d 421 (2014); M.C.L.A. § 600.6104(4); M.C.L.A. § 600.2926.

"The form and quantum of evidence required on a motion requesting the appointment of a receiver is a matter of judicial discretion." *PNC Bank v. Mktg. Goldmines Consulting LLC*, 2021 WL 21762 at *5 (E.D. Mich. Jan. 4, 2021) (citing *Santibanez v. Wier McMahon & Co.*, 105 F.3d 234, 241 (5th Cir. 1997)).

In arguing for the need for a receivership, Plaintiff's opening brief cites *Aviation Supply* for factors that courts consider in its decision. ECF No. 148, PageID.4580.   In *Aviation Supply,* the Eighth Circuit stated that "[a] receiver is an extraordinary equitable remedy that is only justified in extreme situations" and it set out several factors relevant to the analysis. *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316 (8th Cir. 1993). The *Aviation Supply* factors include: (1) the existence of a valid claim by the moving party; (2) the probability that fraudulent conduct has occurred or will occur to frustrate the claim; (3) imminent danger that property will be lost, concealed, or diminished in value; (4) inadequacy of legal remedies; (5) lack of a less drastic equitable remedy; and (6) the likelihood that appointment of a receiver will do more harm than good. *Id*.

However, the parties agree that a broader set of factors listed in *PNC Bank v. Goyette Mech. Co*. should apply. *See* ECF No. 157, PageID.4984 (Plaintiff's reply brief stating that, "Defendant correctly identified a different set of factors used in

*PNC Bank v. Goyette Mech. Co*., 15 F. Supp. 3d 754 (E.D. Mich. 2014).").

Accordingly, the Court will apply the *Goyette* factors. They include:

(1) the adequacy of the security;
(2) the financial position of the borrower;
(3) any fraudulent conduct on the [d]efendant's part;
(4) imminent danger of the property being lost, concealed, injured, diminished in value, or squandered;
(5) inadequacy of legal remedies;
(6) the probability that harm to the plaintiff by denial of appointment would outweigh injury to parties opposing appointment;
(7) the plaintiff's probable success in the action and the possibility of irreparable injury to the plaintiff's interest in the property; and
(8) whether the plaintiff's interests sought to be protected will in fact be well-served by a receivership.

See *Legal Advocacy*, 626 F. Supp. 3d at 975 (citing *PNC Bank v. Goyette Mech. Co*., 15 F. Supp. 3d 754, 758 (E.D. Mich. 2014) (internal citations omitted).

The Court notes, however, that not all factors within the list must be evaluated for the Court to reach its decision. *See Fed. Nat'l Mortg. Ass'n*, 2010 WL 1753112 at *4 ("Considering the relevant factors ...."). "In addition to the consent of the parties, federal courts contemplating the appointment of a receiver ... have found the adequacy of the security and the financial position of the borrower to be the most important ones." *Legal Advocacy*, 626 F. Supp. 3d at 975 (citing *Fed. Nat'l Mortg. Ass'n*, 2010 WL 1753112 at *3). Although Defendant represented during oral argument that Plaintiff's Motion was "premature" and that she could renew it after Defendant complies with post-judgment discovery, there is no indication that Defendant consents to the appointment of a receiver and there is no

-18-

contract in this case establishing Plaintiff's entitlement to such relief. Accordingly, the Court will address the factors taking into special account the adequacy of the security and the financial position of Defendant.

### 1. The Parties Arguments

Plaintiff says that, given the history of the Patels, the questionable nature C. Patel's 2023 Complaint, and C. Patel's relationship to Amee and Deven Patel, there is "a substantial possibility that the Patels (and by extension, Defendant) have orchestrated a scheme to establish C. Patel as a secured creditor with priority in time ahead of legitimate future creditors (such as Plaintiff)." ECF No. 148, PageID.4578. This would allow C. Patel to collect from Metro Man ahead of Plaintiff, "with the intention of preventing, discouraging, or frustrating [her] collection attempts." *Id*.

The Patel family's questionable history includes several tangential cases involving Deven, Amee, C. Patel and their businesses. For example, Deven allegedly pleaded guilty to healthcare fraud and unlawful distribution of controlled substances related to his operation of another pharmacy. *Patel v. FisherBroyles, LLP*, No. 357092, 2022 WL 17170377, at *1, n.1, (Mich. Ct. App. Nov. 22, 2022), *appeal denied*, 994 N.W.2d 256 (Mich. 2023). As a result, Deven was sentenced to a term of imprisonment in a federal penitentiary. *Id*. The history also includes a 2016 forfeiture action filed by the United States against funds held in corporate

bank accounts owned by Amee and Deven Patel. Metro Man I, Inc appeared as a claimant as well. *United States v. Sixty-Six Thousand Three Hundred Sixty-Nine Dollars in U.S. Currency, et al*, No. 16-10680, 2022 WL 9446555, at *1 (E.D. Mich. Oct. 14, 2022). The Government accused the Patels of laundering funds received as a result of Medicare fraud through "various bank and investment accounts assigned to the various businesses operated by the Patels." ECF No. 144-22. The Government claimed to have "evidence of circulation and commingling of illicit proceeds" in the many bank accounts associated with the Patels. *Id*. The forfeiture case resulted in a settlement.

On January 13, 2017, one of Amee Patel's wholly owned companies, VPH Pharmacy, Inc. ("VPH") filed for Chapter 11 bankruptcy (Bankruptcy Case No. 17-30077-dof) in the Eastern District of Michigan, which was converted to a Chapter 7 bankruptcy. At that time, Deven Patel was VPH's sole shareholder. However, he allegedly executed a durable power of attorney authorizing Amee Patel to operate as his agent with regards to VPH. ECF No. 148, PageID.4566. According to Plaintiff, months after the Bankruptcy was filed, Amee Patel caused VPH to transfer nearly all of its assets to another company she owned, without approval from the Bankruptcy court, and without anything of value being given in exchange. ECF No. 148, PageID.4569. As part of the Chapter 7 Bankruptcy proceedings, Trustee Samuel Sweet (the "Trustee") filed at least eight adversary

complaints against several entities he identified as the "Patel Parties," which included: Amee Patel; Deven Patel; C. Patel; Metro Man; the "Amee V. Patel Revocable Living Trust;" a relative named Rajesh Patel; and at least nine other corporations run by the Patels. ECF No. 149-4, PageID.4751.

For the sake of brevity and relevance, the Court will not recite the long procedural and factual background detailed in Plaintiff's Emergency Motion pertaining to the complaints lodged against the Patels, Metro Man, and associated business entities. However, the Court notes that the various adversary proceedings sought the return of over $17 million in fraudulent conveyances, "phantom cash receipts," and insider transfers of VPH's assets, in addition to and separate from various causes of action against those entities for breach of fiduciary duty, declaratory judgments, substantive consolidation, breach of contract, and collection of accounts receivable. ECF No. 149-4, PageID.4763; ECF No. 150-1, PageID.4876. The Trustee alleged that collection against the Patel Parties would be difficult due in part to numerous lawsuits, criminal investigations, and judgments against them. ECF No. 149-4, PageID.4767. "And certain operating entities, such as . . . Metro Man . . . ha[d] significant liens against their assets and face continued litigation cases." *Id*. According to Plaintiff, this resulted in the Trustee agreeing to settle over $17 million in claims for only $300,000.00. *Id*. The events of these tangential cases are not in dispute. Rather, Plaintiff refers to them to illustrate

-21-

Amee and Deven Patel's purported tactics in "hiding, intermingling, and transferring assets between their companies to frustrate attempts to collect against them." ECF No. 148, PageID.4570.

Defendant responds, averring that the "request for appointment of a receiver is highly unusual in a post-judgment collection setting, as many of the factors (security, financial condition of borrower, validity of underlying claim) clearly apply to pre-judgment receivership requests." ECF No. 156, PageID.4974. Defendant's argument also asserts that Plaintiff's allegations pertaining to the tangential matters are "speculative" and "unrelated" to the case presently before the court, noting, *inter alia*, that "Plaintiff's motion includes allegations against members of the Patel family relating to the 2017 Bankruptcy Case and the 2017 Wayne County Case but none of the Patels are parties in this action." ECF No. 156, PageID.4974. Additionally, Defendant argues that there are less drastic remedies available to Plaintiff, noting that "Defendant has represented its willingness to participate in post-judgment discovery, including producing a representative for a creditor's examination." ECF No. 156, PageID.4975. According to Defendant, "the pending show cause request has not been decided, no post-judgment discovery order has been entered against Defendant and there is no allegation that Defendant has violated a Court order." *Id.*

-22-

The Court will discuss its analysis considering the parties' arguments and applying the relevant *Goyette* factors below.

## 2. Analysis

As a preliminary matter, MCL § 600.6104(2) allows a judgment creditor to obtain a restraint on the transfer of a judgment debtor's assets. As judges in this district held recently, "[p]ost-judgment orders containing such restrictions are routinely entered by Federal District Court and Michigan State Court judges, without regard to past conduct by the judgment debtor, and often on an ex-parte basis." *See JPMorgan Chase Bank, N.A. v. Winget*, No. 08-CV-13845, 2019 WL 4492838, at *5 (E.D. Mich. July 22, 2019); *See also Plastic Omnium Auto Inergy Indus. SA de CV v. MCC Dev., Inc.*, No. 21-11141, 2023 WL 5537926, at *1 (E.D. Mich. Aug. 28, 2023); and *Allstate Ins. Co. v. Mercyland Health Servs., PLLC*, No. 18-13336, 2021 WL 1406878, at *7 (E.D. Mich. Feb. 12, 2021); and *Laborers' Pension Trust Fund – Detroit & Vicinity v. Telegraph Paving Co.*, 2012 WL 2018054 (E.D. Mich. 2012) (restraining transfers "only outside the ordinary course of business").

In support of receivership, Plaintiff relies on *PNC Bank, N.A. v. Legal Advocacy*. In that case, a lender brought an action against a borrower and a guarantor, alleging breach of promissory note and breach of guaranty. *Legal Advocacy*, 626 F. Supp. 3d at 979. The court granted the lender's motion for

-23-

appointment of receiver. Applying aggregate factors from *Goyette* and *Santibanez*, the court held that "[t]he facts pleaded by plaintiff explain that defendants have not voluntarily paid any amount towards the judgment and demonstrate a pattern of behavior supporting a finding that this claim [seeking the appointment of a receivership] is valid." *Id*. at 979. The court also found that success on the merits was likely because its order granting summary judgment had been affirmed by the Sixth Circuit, thus, "Plaintiff's entitlement to relief [was] not at all in doubt." *Id*. at 974. Relevant to the Court's analysis was the fact that the defendant failed to appear for a post-judgment creditor's exam, despite being ordered to do so by the court. *Id*.

Further, the court noted that, even if there was a court ordered payment plan, plaintiff was still within their rights to pursue appointment of a receivership under Michigan law. *Id*. In this regard, the court found that "a plan to offer a structured pace of payments will not ease the Court's concern that Defendants will continue to engage in inappropriate behavior," including defendant's failure to pay anything voluntarily over the 11 years that the debt existed. *Id*. This pattern of inappropriate behavior also included a bankruptcy with incompatible filings and the efforts of defendant corporation's agent to create a new corporation—shortly after summary judgment was entered—in a deliberate act to withhold money. *Id*., at 977.

Similar to *Legal Advocacy*—which applies similar but different factors—the relevant factors here weigh in favor of appointing a receiver because, *inter alia*, Metro Man's owners have demonstrated a willingness to delay discovery and engage in inappropriate behavior designed to improperly transfer corporate assets and escape corporate debts. Further, due to Defendant's discovery violations and failure to communicate with Plaintiff regarding collection on the judgment—which was entered nearly ten months ago—no requirement for Defendant to comply with discovery and no potential payment plan would ease the Court's concerns regarding Metro Man's unwillingness to comply with discovery or remit payments on Plaintiff's judgment.

Regarding the first and second *Goyette* factors, Defendant concedes that it has no security to post bond and is in a negative financial position. On the third factor—any fraudulent conduct on the defendant's part—Plaintiff thoroughly explains her assertions regarding the emergent nature of the relief requested and her concerns pertaining to the purported scheme existing between the Patels to transfer Metro Man's assets and frustrate collection on Plaintiff's judgment. Defendant does not deny or attempt to rebut these assertions, arguing only that they are irrelevant. However, the Court need not weigh the veracity of Plaintiff allegations against the Patels because "[i]t is well settled that proof of fraud is not required to support a district court's discretionary decision to appoint a receiver."

-25-

*Legal Advocacy*, 626 F. Supp. 3d at 981 (citing *Aviation Supply Corp.*, 999 F.2d at 317). Nonetheless, the Defendant's failure to deny Plaintiff's allegations tilts the weight of the third factor in favor of appointing a receiver.

The factual allegations advanced by Plaintiff demonstrate that the remaining factors weigh in favor of appointing a receiver. Those factors include:

(4) imminent danger of the property being lost, concealed, injured, diminished in value, or squandered;

(5) inadequacy of legal remedies;

(6) the probability that harm to the plaintiff by denial of appointment would outweigh injury to parties opposing appointment;

(7) the plaintiff's probable success in the action and the possibility of irreparable injury to the plaintiff's interest in the property; and

(8) whether the plaintiff's interests sought to be protected will in fact be well-served by a receivership.

Regarding the fourth and fifth factors, if Metro Man's assets will indeed be transferred upon meritorious adjudication of C. Patel's 2023 Complaint, the only remedy capable of interfering with such a purported scheme to render Metro Man uncollectable against Plaintiff would be injunctive relief or appointment of a receiver. Indeed, given Defendant's delay tactics, the Court has no reason to believe that it will comply with the full scope of discovery requested in the subpoena, despite failing to object and being ordered to comply *supra*. However, even if it did comply with the subpoena, nothing is to stop Amee and Deven Patel

-26-

from transferring Metro Man's assets if C. Patel obtains the relief requested in the 2023 Complaint.

Regarding the potential harm resulting from appointment, Metro Man states that, "Plaintiff seeks a complete asset freeze which, if granted, would prevent Defendant from paying bills or otherwise operating its business in the ordinary course, the effect of which would be felt not just by Defendant, but by the residents of Westwood Nursing Center." ECF No. 156, PageID.4978. Defendant's argument suggests that injunctive relief would cause harm. This result can be avoided, however, by enjoining transfers of Metro Man's assets that potentially occur outside of the ordinary course of business and appointing a receiver. As Plaintiff notes, "a professional receiver could easily improve [Defendant's] operations, given their claim of insolvency." ECF No. 157, PageID.4987. Plaintiff also represented at oral argument that a receiver "could not do a worse job" of operating Defendant's business than Amee and Deven Patel, given the severely negative state of Metro Man's financial condition. Further, Plaintiff attached to her Motion a proposed Order for Receivership Over Metro Man I, Inc d/b/a Westwood Nursing Center. *See* ECF No. 151-4. That Order clearly authorizes the receiver to proceed with Metro Man's operations.

Defendant also alleges that appointment of a receiver would be harmful because the case is on appeal and "receiverships are extremely expensive,

Defendant should not be required to bear such additional expense based on the flimsy argument presented by Plaintiff." ECF No. 156, PageID.4976. Defendant's response also asserts that it is suffering from a negative financial condition and not able to pay for a receiver. Metro Man's response offers no evidence pertaining to its overall financial condition, it does alert the Court to certain debts it owes, but Metro Man says nothing about the amount of income it generates, how much capital it possesses, or the amount of money it pays monthly in expenses. Further, although the case is on appeal, Defendant fails to raise any argument suggesting that the Sixth Circuit could be likely to overturn the jury verdict or the award for attorneys' fees entered in this case.

In other words, Plaintiff will likely be successful on appeal and there is a high probability "that harm to the plaintiff [caused] by denial of the appointment would outweigh injury to the [defendant]." Indeed, if a receiver is not appointed, Metro Man will likely frustrate plaintiff's collection efforts and transfer its assets to C. Patel. This would result in irreparable harm. As Plaintiff asserts, "if Amee Patel violates an order prohibiting the transfer of assets [as she allegedly did in the VPH case], especially if those assets are transferred to C. Patel, [it] cannot be undone," given that C. Patel is a foreign citizen. ECF No. 155, PageID.4962. If Amee and Deven Patel transfer Metro Man's assets, Plaintiff will be unable to collect on her judgment amounting to nearly half a million dollars. If she is unable

to collect on her judgment, all the effort and expense she incurred—between the filing of the complaint, to the jury verdict awarding her damages, and her award for attorneys' fees—will have been wasted. On the other hand, if a receiver is appointed, Defendant will be forced to bear extra expenses. The potential harm caused to Plaintiff if a receiver is not appointed outweighs the potential harm that Defendant would experience if a receiver were appointed.

Defendant argues that "Plaintiff does not have the right, as part of post-judgment collection procedures under the Federal Rules of Civil Procedure or Michigan law, to take over Defendant's business merely because her judgment remains unpaid." ECF No. 156, PageID.4976. The argument continues, averring that, "this is in no way an extreme situation which warrants the extraordinary remedy of a receiver." *Id*. In support of this argument, Metro Man relies on *Steinberg v. Young*, 641 F. Supp. 2d 637, 644 (E.D. Mich. 2009).

In *Steinberg*, a terminated employee brought an action against his former employer for breach of contract and fraudulent transfer. A bank who had security interest in employer's assets intervened. *Id*. The employee moved for appointment of receiver over the assets of the employer's subsidiary companies. *Id*. The Court denied the motion, noting that the bank had priority over the employee as a creditor and the assets of the employer's entities were not likely to return a surplus of

monies beyond the value of the claims corresponding to the bank's security interest in the corporate entities. *Id*.

*Steinberg* is distinguishable because, due to Metro Man's unwillingness to comply with discovery requirements, the Court has no information pertaining to whether appointing a receiver over Metro Man could yield a surplus of monies above and beyond the value of the debt it owes to creditors other than Plaintiff. Indeed, Metro Man has produced no information pertaining to the amount of capital it possesses, how much income it generates, or how much money its pays in expenses on a regular basis. And Metro Man has shown no willingness to produce such information. Accordingly, *Steinberg* does not alter the Court's calculus and the *Goyette* factors weigh in favor of appointing a receiver.

It is true that the appointment of a receiver is an extreme remedy of last resort that should not be used when another, less dramatic remedy exists. No remedy—other than enjoining transfer of assets and appointment of a receiver— will assure that Plaintiff can collect on her judgment. Metro Man has been clearly engaged in delay tactics from the outset of this case, repeatedly violating this Court's pre-judgment discovery orders, frequently switching attorneys, and failing to appear for a final pretrial conference. Defendant also ignored Plaintiff's correspondence regarding payment and failed to appear for a creditor's exam or

produce documents pertaining to its financial condition, despite being served with a subpoena.

Even as the Court writes this Opinion and Order, Metro Man's assets are in imminent danger of being improperly transferred pursuant to a default judgment allegedly manufactured by the Patels. Due to its present and continued violation of the post judgment subpoena, its pre-judgment violations of discovery orders, its delay tactics, the suspicious behavior of its owners, and the emergent nature of the relief requested, the Court will appoint a receiver over Metro Man.

### D. Defendant's Motion for Leave

On November 1, 2023, Defendant filed an Emergency Motion for Leave to File Supplemental Brief Regarding the Detrimental Business Impacts of the Appointment of Receiver [ECF No. 162]. It argued that good cause exists to modify the briefing schedule and requested fourteen days "to file a supplemental brief for consideration pending this Court's decision on the appointment of a receivership." ECF No. 162, PageID.5044. Specifically, Plaintiff stated that, while oral argument took place on October 30, 2023, "it is essential that Defendant be provided the opportunity to present additional facts to the Court outlining the detrimental impact of a receivership on Defendant's business, the lack of ability to pay for a receivership, the possibility of full liquidation of Defendant's business, and putting Defendant out of business without any possible recourse." ECF No.

162, PageID.5046. Attached to Defendant's Motion is correspondence pertaining to debts it owes to the State of Michigan.

Rather than comply with discovery or submit documents showing the amount of capital it possesses, how much money it brings into the corporation on a regular basis, or monthly expenses, Metro Man asks the Court for permission to file supplemental briefing so that it may provide additional facts pertaining the substantial number of debts it owes to various creditors. All the arguments Defendant makes in its Motion for leave were addressed in Defendant's response to Plaintiff's Emergency Motion and at oral argument. As stated *supra*, even though Metro Man has a substantial number of debts and risks losing its business, the potential harm caused to Plaintiff by the absence of a receiver outweighs the potential harm caused to Defendant by appointment of a receiver. Further, as noted *supra*, a receiver could assure that Metro Man continues operations even under receivership. Further evidence of the debts Metro Man owes to other creditors will not change the Court's conclusion. Thus, the supplemental briefing Defendant seeks to file is unnecessary. Accordingly, Defendant's Motion for Leave is **DENIED**.

## IV. Conclusion

For the reasons set forth below, Plaintiff's Show Cause Motion is **GRANTED IN PART AND DENIED IN PART**. It is granted with respect to

Plaintiff's request to compel discovery; Defendant must produce all documents requested in the subpoena and designate a witness who shall appear to be deposed no later than **thirty (30) days** from the date of this Opinion and Order. Defendant **SHALL** produce the documents subject to subpoena and identify the individual with the most knowledge of Metro Man's financial condition no later than **November 14, 2023**.

No later than **forty-five (45) days** after entry of this order, Defendant must show cause in writing why it should not be held in contempt for post-judgment discovery violations. The portion of Plaintiff's Show Cause Motion that requests injunctive relief is **DENIED.** Plaintiff's Ex Parte Motion is **DENIED**.

Plaintiff's Emergency Motion is **GRANTED**. Defendant is **ENJOINED** from transferring any of its assets outside of the ordinary course of business. The Court will attach to the end of this Opinion and Order an Order For Receivership Over Metro Man I, Inc. d/b/a Westwood Nursing Center. That attachment details the terms of the receivership. As stated in that Order, the receiver **SHALL** be Michael Stevenson and his compensation will be set at $250 per hour.

Defendant's Motion for Leave is **DENIED**.

C. Patel's Motion to Intervene [ECF No. 159] will be addressed in a forthcoming Opinion and Order.

**IT IS SO ORDERED.**

-33-

Dated:  November 16, 2023          /s/ Gershwin A. Drain
                                   GERSHWIN A. DRAIN
                                   UNITED STATES DISTRICT JUDGE


CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
November 16, 2023, by electronic and/or ordinary mail.
                        /s/ Teresa McGovern
                          Case Manager

-34-

## UNITED STATES DISTRICT COURT EASTERN DISTRICT OF MICHIGAN SOUTHERN DIVISION

Zelma Motley,

        Plaintiff,

v.

Metro Man I, Inc. d/b/a
Westwood Nursing Center,

        Defendant.

Case No. 20-cv-11313
Honorable Gershwin A.
Drain United States District
Judge

Hon. Curtis Ivy, Jr.
United States Magistrate Judge

## <u>ORDER FOR RECEIVERSHIP OVER METRO MAN I, INC. d/b/a WESTWOOD NURSING CENTER</u>

This matter comes before the Court on the Emergency Motion for Order Preventing the Transfer of any Property of the Defendant. The Court having found good cause for the entry of this Order and is fully advised in the premises. The Court has further determined that the appointment of Michael A. Stevenson as Receiver (as defined below) is just and appropriate under the circumstances and has

-1-

determined that the Receiver's authority and duties as set forth herein is both just and appropriate.

All notice requirements under MCL 554.1013 have been satisfied and good cause exists to enter this Order as outlined in the Motion before the Court. The Court further finds that multiple grounds set forth in MCL 554.1016 are satisfied for the appointment of a receiver. The Court also finds that it has jurisdiction over this matter, pursuant to, *inter alia,* MCL 600.2926.

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1.     Effective and commencing immediately upon the entry of this Order, Michael A. Stevenson (P37638) of Stevenson & Bullock, P.L.C., 26100 American Drive, Suite 500, Southfield, MI 48034 (the "Receiver") shall be and is hereby appointed as Receiver over Metro Man I, Inc. d/b/a Westwood Nursing Center (the "Business" or "Defendant") with full powers as receiver of all of the Business' assets and property, real, personal, or mixed, tangible and intangible, and wherever situated (collectively, the "Receivership Estate").

2.     The Plaintiff and Defendant shall cooperate with the Receiver and shall make available to the Receiver for inspection and copying all of the records concerning the Receivership Estate as shall be necessary for the Receiver to fulfill his duties under the terms of this Order. Furthermore, the

Plaintiff and Defendant and their agents and employees shall fully cooperate with the Receiver at all times during the pendency of the receivership.

## Authority of the Receiver

3. The Receiver is appointed pursuant to, *inter alia,* MCL § 600.2926 and MCR2.622.

4. The Receiver is authorized to exercise all powers and authority generally available under the laws of the State of Michigan that may be incidental to the powers described in this Order and reasonably necessary to accomplish the purpose of this Receivership. The Receiver shall have such additional powers that may be provided by law and that the Court may from time to time direct or confer.

5. Without limiting the foregoing, the Receiver shall have the power to employ and/or contract with professionals and others, including but not limited to counsel, accountants, brokers, assistants, agents, private investigators, consultants, advisors, realty professionals, bookkeepers, and other third-parties (collectively, the "Professionals") as he deems necessary to carry out his duties. The Receiver may pay any and all of the Professionals from the Receivership Estate.

6. In addition to the foregoing, and without limitation, the Receiver is

hereby authorized, directed and vested with the authority to take immediate possession of the Receivership Estate, and to exercise full control over the Receivership Estate in all respects; and in so doing, the Receiver will have all powers generally available to Receivers under the laws of the State of Michigan as to the Receivership Property, and will have, among others, the following specific powers:

a. To change any and all locks and passwords to the Receivership Estate and, if appropriate, limit access to some or all of the Receivership Estate;

b. To assume control over the Receivership Estate and to collect and receive all cash, cash on hand, checks, cash equivalents, credit card receipts, demand deposit accounts, bank accounts, cash management or other financial accounts, bank or other deposits and all other cash collateral (all whether now existing or later arising); current and past due earnings, revenues, rent, issues and profits, accounts or accounts receivable (all whether unpaid, accrued, due or to become due); all claims to rent, negotiate any insurance claims either in progress or to be filed, issues, profits, income, cash collateral, lease termination or rejection claims, and all other gross income derived with respect to the Receivership Estate or business operations of the Receivership Estate (collectively, the "Income");

c. To maintain, sell, secure, manage, operate, repair and preserve the Receivership Estate, directly or through unrelated agent(s) contracted for that purpose, without further Court Order;

d. Review any/and all existing vendor, supply, maintenance, lease, management, and/or other agreements and contracts

-4-

related to the Receivership Estate, and to determine which, if any, Receiver will assume;

e.  To enforce any valid covenant of any contract and/or other agreement related to the Receivership Estate;

f.  To reject any unexpired contracts, agreements or leases of the Receivership Estate that are burdensome on the Receivership Estate, and/or which the Receiver believes are not in the best interest of the Receivership Estate;

g.  To execute, cancel, abrogate, renegotiate, or modify any/and all existing vendor, supply, maintenance, lease, management, and/or other agreements and contracts related to the Receivership Estate;

h.  To negotiate and execute any/and all new vendor, supply, maintenance, lease, management, and/or other agreements and contracts related to the Receivership Estate;

I.  For the Receivership Estate which is not covered by insurance under any applicable mortgage, to determine that the property is adequately insured or to procure insurance if funds are available for that purpose. The insurance companies shall accept a copy of this order and add the Receiver as an Additional Insured to all such policies that cover any of the Receivership Estate;

J.  Investigate the amount owed, historical payment information, escrow account balances and insurance coverage, obtain payoff statements and extent of any liens on the Receivership Estate as of the date of creation of the receivership estate by entry of this Order; and, to pay lien claimants as reasonably necessary for the release of any part of the Receivership Estate, or to facilitate a sale of any part of the Receivership Estate;

k.  To maintain a separate account with a federally-insured banking institutions or savings associations in the Receiver's

-5-

own name, as Receiver, from which the Receiver shall disburse all authorized payments as provided in this Order;

l.    To sign as Receiver, on behalf of the Receivership Estate, any checks, bank accounts, drafts, stocks, bonds, vehicle titles, or other instruments of title and said signature shall have the same legal effect as had an authorized individual signed same on behalf of the Receivership Estate;

m.    To pay any taxes as funds are available and any other taxes or assessments against the Receivership Estate which the Receiver deems appropriate and necessary for preservation of the Receivership Estate; and, to contest, protest or appeal any tax or assessment pertaining to the Receivership Estate. (Any refund or reimbursement of taxes paid shall be deemed 'Income' to be applied as provided below);

n.    To exercise all rights reserved or granted to the Receivership Estate under any mortgage, other contract, or under Michigan or Federal law; and

o.    To investigate any previous transfer or financial transactions relating to the Receivership Estate to determine whether any such transactions were potentially fraudulent and/or avoidable under applicable law. The Receiver is also authorized to pursue recovery of any such fraudulent transfers or avoidable transactions in accordance with applicable law.

7.    Immediately upon entry of this Order and continuing until the termination of the Receiver's appointment, the Receiver is authorized to take reasonable and appropriate actions to prevent waste and to preserve, manage, maintain, secure, lease, and safeguard the Receivership Estate during the pendency of the receivership. The Receiver, in the exercise of his business

judgment, shall be empowered but not obligated to:

   a.  Preserve, hold, and manage the Receivership Estate, and perform all acts necessary to preserve its value, to prevent any loss, damage, or injury;

   b.  Prevent the withdrawal or misapplication of funds;

   c.  Sue for, collect, receive, and take possession of all goods, chattels, rights, credits, moneys, effects, land, leases, documents, books, records, work papers, and records of amounts, including electronically stored information and other papers of the Receivership Estate;

   d.  Initiate, petition, defend, compromise, adjust, intervene in, dispose of, or become a party to any actions or proceedings, including those under Title 11 of the United States Code, in state, federal, or foreign court(s) necessary to preserve the Receivership Estate or to carry out his duties pursuant to this Order;

   e.  Issue subpoenas to obtain documents and records pertaining to the receivership and conduct discovery in this action on behalf of the Receiver;

   f.  Open one or more bank accounts as designated depositories for funds of the Receivership Estate. The Receiver may deposit all funds of the Receivership Estate in such designated accounts and shall make all payments and disbursements from the Receivership Estate from such accounts; and

   g.  The Receiver and his Professionals may review confidential patient records as necessary and appropriate to discharge the Receiver's duties and responsibilities under this Order, provided however, that the Receiver protects the confidentiality of such records as required under applicable law and regulations including, but not limited to, the Health Insurance Portability and Accountability Act of 1996 and the

federal HIPAA privacy regulations at 45 Code of Federal Regulations.

8.     The authority granted to the Receiver is self-executing, unless the action requires approval by this Court.  Unless the action requires approval by this Court, the Receiver is authorized to act on behalf of the Receivership Estate with respect to the Receivership Estate or in the Receiver's name without further order of this Court and without personal recourse against the Receiver.

## **Compensation of Receiver**

9.     The Receiver and his Professionals shall receive compensation for their services, payable from the Receivership Estate at $250 per hour.  The Receiver and his Professionals shall also be entitled to be reimbursed for out-of-pocket expenses related to the performance of their duties. The compensation and reimbursed expenses shall be an administrative claim against the Receivership Estate and entitled to priority over any and all secured, priority, and unsecured claims.  The Receiver and his Professionals shall issue invoices to the parties to this action, through their respective counsel (as applicable), on a monthly basis.  The Receiver and his Professionals may receive payment on a monthly basis, without further Court Order, provided no objections are filed with the Court and served upon the Receiver, his Professionals, and all other parties in interest within five (5) days after such invoices are sent by electronic

mail to all parties' counsel of record. In the event that an objection is timely filed with the Court and served upon the Receiver, Professionals, and all other parties in interest, the objecting party shall file a motion with this Court requesting that this Court determine the propriety of the fees sought. In the event that the objecting party fails to file a motion with this Court within five (5) days after objecting to the requested fees or expenses, its objections are waived. In the objection and the motion, the objecting party shall articulate with specificity which time or expense entries are objectionable and the reason for the objection. In the event that a motion is timely filed, the Receiver is authorized to pay himself and his Professionals those fees and expenses to which no objection has been raised.

## **Immunity of Receiver**

10. Neither the Receiver nor his Professionals shall not be liable for any claim, objection, liability, action, cause of action, cost, or expense of the Plaintiff, Defendant, or Receivership Estate arising out of or relating to events or circumstances occurring prior to this Order, including, without limitation, any contingent or unliquidated obligations and any liability from the performance of services rendered by third parties on behalf of the Receivership Estate, and any liability to which the Receivership Estate is currently or may

ultimately be exposed under any applicable laws pertaining to the ownership, use, or operation of the Receivership Estate (collectively, all of the foregoing are referred to as the "Pre- Receivership Liabilities"). Similarly, neither the Receiver nor his Professionals shall not be liable for any claim, objection, liability, action, cause of action, cost, or expense of Plaintiff, Defendant, or Receivership Estate arising out of the performance of receivership duties without the express written permission of this Court authorizing a lawsuit against the Receiver or the Professionals.

11. The Receiver and his Professionals, employees, agents, and attorneys shall have no personal liability, and they shall have no claim asserted against them relating to the Receiver's duties under this Order, except for claims due to their intentional tortious acts, breaches of fiduciary duty, gross negligence, gross or willful misconduct, acts committed in bad faith, malicious acts, and/or the failure to comply with the Court's Orders.

## **Restraint on action against Receiver and Receivership Estate**

12. Except as otherwise ordered by this Court, the parties, their agents and employees, and all other persons with notice of this Order (other than the Receiver) are restrained and enjoined from directly or indirectly transferring, encumbering, removing, expending, distributing, concealing, destroying,

mutilating, damaging, erasing, altering, disposing of, or otherwise diminishing or causing harm to any of the Receivership Estate, doing any act to interfere with the Receiver from taking control, possession, or management of the Receivership Estate, or the duties of the Receiver, or to interfere with the exclusive jurisdiction of this Court over the Receivership Estate.

13.    Except as otherwise ordered by this Court, during the pendency of the receivership, the Plaintiff and Defendant, and all other persons, creditors, and entities be and hereby are stayed from taking any action to establish or enforce any claim, right, or interest for, against, on behalf of, in, or in the name of the Receiver, the Receivership Estate, or the Receiver's authorized agents acting in their capacities as such, including but not limited to the following actions:

        a.    Commencing, prosecuting, litigating, or enforcing any suit, except that actions may be filed to toll any applicable statute of limitations;

b.     Accelerating the due date of any obligation or claimed obligation, enforcing any lien upon, or taking or attempting to take possession of or retaining possession of, the Receivership Estate, any property claimed by the Businesses, or attempting to foreclose, forfeit, alter, or terminate any of the Receivership Estate's interest in property, whether such acts are part of a judicial proceeding or otherwise;

c.     Using self-help or executing or issuing, or cause the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with, or creating or enforcing a lien upon the Receivership Estate or any property, wherever located, owned by or in the possession of the Receivership Estate or the Receiver, or any agent of the Receiver; and

d.     Doing any act or thing to interfere with the Receiver taking control, possession, or management of any of the Receivership Estate or any property subject to the receivership, or to in any way interfere with the Receiver or the duties of the Receiver, or to interfere with the exclusive jurisdiction of this Court over the property and Receivership Estate.

14.     Notwithstanding the foregoing paragraph, the entry of this Order does not stay the enforcement or continuation of an action or proceeding by a governmental

-12-

unit to enforce such governmental unit's police or regulatory power.

### Directives to financial institutions, employers, and others

15. Pending further order of this Court, any financial or brokerage institution, business entity, or person, that holds, controls, or maintains custody of any account or asset, or at any time since September 1, 2017, has held, controlled, managed or maintained custody of any account or asset owned by, in the name or for the benefit of the Receivership Estate, shall:

    a.    Prohibit the Plaintiff, Defendant, and all other persons from withdrawing, removing, assigning, transferring, pledging, encumbering, disbursing, dissipating, converting, selling, or otherwise disposing of any such asset except as directed by the Receiver;

    b.    Deny the Plaintiff, Defendant, and all other persons access to any safe deposit box that is titled in the name of the Receivership Estate either individually or jointly with another person or entity or in which any of the Receivership Estate is located; and

    c.    Provide the Receiver, within five (5) business days of receiving a copy of this

-13-

Order, a statement setting forth:

I.     The identification number of each and every account or asset tiled in the name, individually or jointly, of or held on behalf of, or for the benefit of the Receivership Estate;

II.     The balance of each such account, or a description of the nature and value of such asset as of the close of business on the day on which this Order is served, and, if the account or other asset has been closed or removed, the date closed or removed, the total funds removed to close the account, and the name of the person or entity to whom such account or other asset was remitted;

III.     The identification of any safe deposit box that is either titled in the name of the Receivership Estate or jointly with, another person or entity or is otherwise subject to access by the Receivership Estate; and

IV.     Upon request by the Receiver, promptly provide copies of all records or other documentation pertaining to such account or asset, including, but not limited to, originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, and all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs.

-14-

16.    Any savings, bank or similar institutions receiving a copy of this Order shall accept the signature of the Receiver to withdraw any and all funds of the Receivership Estate have the right to withdraw from said institution with the same legal effect as had an authorized individual signed same on behalf of the Receivership Estate.

17.    Any savings, bank or similar institutions receiving a copy of this Order shall forthwith turn over to the Receiver any and all contents of any safety deposit boxes, owned by the Receivership Estate, in whole or together with any other individual, or in which any of the Receivership Estate is located.

### Delivery of possession of Receivership Estate to Receiver

18.    This Court commands the United States Marshal Service, or any other court officer that the Receiver may choose to employ, to without delay, deliver to the Receiver possession of the Receivership Estate.

-15-

19.   After service of this Order upon the Plaintiff, Defendant, and any other person or entity served with a copy of this Order, shall deliver to the Receiver:

d.   Possession and custody of all funds, assets, property, and all other assets, owned beneficially or otherwise, wherever situated of the Receivership Estate;

e.   Possession and custody of documents of the Receivership Estate, including but not limited to, all books and records of accounts, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, and check registers), title documents and other papers;

f.   All keys, computer passwords, entry codes, and combination locks necessary to gain access or to secure access to any of the assets or documents of the Receivership Estate, including but not limited to; means of communications, account, computer systems, or other property; and

g.   Information identifying the accounts, properties or other assets or obligations of the Receivership Estate.

## **Miscellaneous**

20.    The Defendant, any entity in which the Defendant has a controlling or majority interest, or third party must execute any document deemed necessary by the Receiver, including but not limited to, a Business Associate Agreement in the form approved by the Receiver.

21.    The Receiver shall, during the pendency of this action, have the right to apply to this Court for further instructions or directions.

22.    The Receiver shall not be responsible for the preparation or filing of any tax returns for the Receivership Estate (including income, personal property, commercial activity, gross receipts, sales and use, or other tax returns). The Receiver shall provide the parties with information in the Receiver's possession that is necessary for the parties to prepare such tax returns, upon the party's reasonable request.

23.    The Receiver shall submit quarterly reports to the Court and parties with respect to the Receivership

-17-

Estate.

24.   The Receiver shall file and serve his acceptance of this receivership.

25.   The Receiver is not required to post a bond.

26.   This Order may be amended or supplemented for cause after a motion and hearing or, alternatively, upon the showing of good cause and upon the stipulation of all parties to this action, including the Receiver.

27.   This Court retains jurisdiction to hear and determine all matters arising from or related to the implementation and enforcement of this Order.

**IT IS SO ORDERED.**

Dated:  November 16, 2023          /s/ Gershwin A. Drain
                                   GERSHWIN A. DRAIN
                                   UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on November 16, 2023, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager

-18-